[Cite as *Caruso v. Caruso*, 2013-Ohio-5650.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| JOSEPH CARUSO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2013-A-0017** |
| KRISTIN M. CARUSO, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas.
Case No. 2012 DR 207.

Judgment: Affirmed.

*Jane Timonere*, Timonere Law Offices, L.L.C., 4 Lawyers Row, Jefferson, OH 44047-1099 (For Plaintiff-Appellant).

*Anna M. Parise*, Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH 44077 (For Defendant-Appellee).

*Christopher M. Newcomb*, The Iarocci Law Firm, L.L.C., 213 Washington Street, Conneaut, OH 44030 (Guardian ad litem).

TIMOTHY P. CANNON, P.J.

{¶1} This matter is on appeal from an Ashtabula County Court of Common Pleas judgment adopting a magistrate's determination that the trial court lacked jurisdiction to make an initial child custody determination in the divorce proceedings of Joseph and Kristen Caruso. For the reasons that follow, the judgment of the trial court is affirmed.

{¶2} Appellant, Joseph Caruso, and appellee, Kristen Caruso, were married on May 6, 2006. At that time, the Carusos lived in Virginia. The Carusos have twin boys, born October 9, 2006. The couple experienced financial difficulties stemming from appellee's dismissal from her position as a college basketball coach. Thus, in October 2011, appellant moved to Ashtabula County, Ohio, to prepare an apartment for his family on property owned by his mother.

{¶3} The Carusos subsequently began the process of moving their belongings from Virginia to Ohio. Though the family planned to make a permanent move to Ohio, appellee continued to live with the children in Virginia, where the children attended preschool at Walnut Hills Baptist Church until November 22, 2011. On November 26, 2011, appellee and the children joined appellant in Ohio.

{¶4} The Caruso family lived together in Ohio until March 19, 2012, at which time appellee and the children moved back to Virginia. The children were re-enrolled and attended school in Virginia starting in March 2012. Appellee stated an intention to stay in Virginia only temporarily; however, the Carusos' relationship deteriorated, and on May 15, 2012, appellant filed a complaint for divorce and a motion for temporary custody in Ashtabula County, Ohio. Appellee and the children continued to live in Virginia.

{¶5} On June 7, 2012, appellee filed a motion to dismiss the complaint for lack of jurisdiction and improper venue. A hearing was held on July 19, 2012. On July 20, 2012, the magistrate issued an order stating the court had jurisdiction based on a finding that the Carusos' minor children had become residents of Ohio in October 2011, and were residents of Ohio on May 15, 2012, when appellant filed for divorce. Pursuant

2

to appellee's motion to set aside the magistrate's order, additional hearings to determine jurisdiction were conducted by the magistrate on August 22, 2012, and August 29, 2012. On August 31, 2012, the magistrate determined that Ohio was not the children's "home state" as defined in R.C. 3127.01(B)(7). Thus, pursuant to R.C. 3127.15(A), the magistrate found the Ashtabula County Court of Common Pleas did not have jurisdiction over the initial custody determination. The trial court adopted the magistrate's decision.

{¶6} Appellant timely appealed, asserting a single assignment of error:

{¶7} "The trial court trial court [sic] incorrectly determined that the children had not lived in Ohio the requisite time to give the Ashtabula County Common Pleas Court jurisdiction to make an intial [sic] custody determination under the UCCJEA."

{¶8} The issue presented for our review is "[w]hether the Court's determination that the children did not become residents of the State of Ohio until November 26, 2011 and that they had not lived in the state for at least 6 consecutive months immediately preceding the filing of the complaint is correct."

{¶9} In his assignment of error, appellant contends that Ohio is the Caruso children's "home state" for purposes of an initial custody determination because the children were domiciled in Ohio from October 2011, until at least March 2012.

{¶10} Appellant notes that R.C. 3105.03 requires the complainant in a divorce action filed in Ohio to have been an Ohio resident for at least six months prior to the filing of the complaint. Furthermore, citing *Slaughter v. Slaughter*, appellant contends this residency requirement "has been construed to mean a domiciliary residence, which is a residence accompanied by an intention to make Ohio a permanent home." 2009-

3

Ohio-6110, 2009 Ohio App. LEXIS 5119, ¶19. This, however, is not the controlling statute for purposes of determining jurisdiction in this case. In *Slaughter*, the court held that Ohio courts lack jurisdiction under the Uniform Interstate Family Support Act ("UIFSA") to entertain a counter-claim for divorce against a non-Ohio resident plaintiff because UIFSA limits jurisdiction to matters of paternity and support. *Id.* at ¶13-17. That holding has no application to the question addressed by the magistrate.

{¶11} For purposes of this case, the issue is resolved by interpretation and application of R.C. Chapter 3127, wherein Ohio has adopted the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). "Home state" is defined therein as "the state in which a child *lived* with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of child custody proceedings." R.C. 3127.01(B)(7) (emphasis added). The Ohio Supreme Court has interpreted R.C. 3127.01(B)(7) to mean that "a child's home state is where the child lived for six consecutive months ending within the six months before the child custody proceeding was commenced." *In re E.G.*, 2013-Ohio-495, 2013 Ohio App. LEXIS 428, ¶14.

{¶12} The issue before the magistrate was whether the statutory time period began to run for purposes of the "home state" definition in R.C. 3127.01(B)(7) at the time the children became domiciled in Ohio or whether the term "lived in," as used in the statute, connotes something other than legal domicile.

{¶13} Here, the relevant dates are not in dispute; it is only their legal significance that must be determined. Because resolution of this case is dependent upon interpretation of a statute, it is a matter of law subject to de novo review. *Stalloy Metals,*

4

*Inc. v. Kennametal, Inc.*, 11th Dist. Geauga No. 2012-G-3045, 2012-Ohio-5597, ¶ 37. Furthermore, matters of jurisdiction are reviewed de novo. *In re K.R.J.*, 12th Dist. Clermont No. CA2010-01-012, 2010-Ohio-3953, ¶16.

{¶14} R.C. 3127.15 grants Ohio courts the jurisdiction to make initial custody determinations for children whose "home state" is Ohio. Furthermore, R.C. 3127.15(A) "is the exclusive jurisdictional basis for making a child custody determination by a court of this state." R.C. 3127.15(B).

{¶15} Contrary to appellant's assertion, the statute does not use the word residence or domicile. Instead, R.C. 3127.01(B)(7) requires the courts to determine the state in which the child "lived." "Home state" and "domicile" are distinct concepts. A person is domiciled in Ohio when he or she establishes an actual residence in Ohio and intends to make Ohio his or her permanent home. *Snelling v. Gardner*, 69 Ohio App.3d 196, 201 (10th Dist.1990). However, assuming a child has lived in another state for six months prior to moving to Ohio, Ohio does not become a child's "home state" unless the child has *lived* in Ohio for six months. R.C. 3127.01(B)(7). The term "home state" thus connotes a place in which the child has actually lived for at least six months, rather than a place of legal residence or domicile. For example, when a child moves from one state to another, his or her legal domicile may change immediately, but the new state does not immediately become the "home state." Similarly, the requirement that the child must live in Ohio for six months before an Ohio court acquires jurisdiction does not mean the child must be domiciled in Ohio for six months. It simply means the child must physically live in Ohio for six months.

5

{¶16} Appellant cites *In re Taylor*, 5th Dist. Tuscarawas No. 2005-AP-11-0081, 2006-Ohio-6025, ¶41, for the proposition that a child's domicile is determined by that of his or her parents. Appellant believes the Caruso family became domiciled in Ohio when he moved in early October 2011. The holding in *In re Taylor*, however, addresses the issue of where a child is domiciled, not where the child lives. As a result, it has no application to this case. Furthermore, the analysis in that case does not support appellant's position.

{¶17} In *In re Taylor*, the court explained that one can reside in a different location from one's domicile. *Id*. at ¶40, citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (noting that a child's domicile may be a place the child has never been). Thus, if, as appellant argues, a child's domicile is the same as his or her parents' and a child's "home state" is the same as his or her domicile, then a child need not live in his or her "home state" at all.

{¶18} Though the Carusos had begun the process of moving their family to Ohio in October 2011, the children remained in Virginia where their mother had a home and where they attended preschool and participated in extracurricular activities. It was not until November 26, 2011, that the children physically moved from Virginia to Ohio. Thus the six-month period referred to in R.C. 3127.01(B)(1) did not begin to run until November 26, 2011. Ohio, therefore, could not have become the children's "home state" for the purposes of an initial custody determination until May 26, 2012, assuming the children continued to live in Ohio with at least one of their parents. Under the UCCJEA, Virginia remained the children's "home state," because it is undisputed that they lived there for at least six months prior to their move to Ohio. The children moved

6

back to Virginia on March 19, 2012, after living in Ohio for four months. Even if the time the children spent in Virginia from March 20, 2012, to May 15, 2012, could have been considered a temporary absence, and therefore count as part of the six-month period pursuant to R.C. 3127.01(B)(7), Ohio still could not have become the children's "home state" until May 26, 2012. Thus, at the time appellant filed his divorce action and motion for temporary custody, on May 15, 2012, the Ashtabula County Court of Common Pleas was without jurisdiction to make an initial custody decision.

{¶19} Appellant's assignment of error is without merit. The judgment of the trial court is hereby affirmed.


CYNTHIA WESTCOTT RICE, J.,

COLLEEN MARY O'TOOLE, J.,

concur.