[Cite as *Thomas v. Thomas*, 2017-Ohio-8710.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JAMES O. THOMAS | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | Case No. 17CA04 |
| | : | |
| LILLIAN S. THOMAS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Richland County Court of Common Pleas, Domestic Relations Case No. 2014 DIV 0890 |
| JUDGMENT: | AFFIRMED |
| DATE OF JUDGMENT ENTRY: | November 22, 2017 |

APPEARANCES:

| For Plaintiff-Appellee: | For Defendant-Appellant: |
|---|---|
| SHANNON G. THATCHER | J.C. RATLIFF |
| 1007 Lexington Ave. | JEFF RATLIFF |
| Mansfield, OH 44907 | ROCKY RATLIFF |
| | 200 West Center Street |
| | Marion, OH 43302 |

*Delaney, P.J.*

{¶1}   Defendant-Appellant Lillian S. Thomas appeals the June 14, 2016 judgment entry of the Richland County Court of Common Pleas, Domestic Relations Division.

### FACTS AND PROCEDURAL HISTORY

{¶2}   Plaintiff-Appellee James O. Thomas ("Father") and Defendant-Appellant Lillian S. Thomas ("Mother") were married on December 31, 2007. Father and Mother lived in Ohio at the time of the marriage. In 2009, Father joined the military and his military service has taken him periodically from home for as long as a month. One child was born as issue of the marriage: D.T., born on May 6, 2011. D.T. was born in Ohio.

{¶3}   The parties' marriage was challenging, with the parties separating many times during the marriage. When D.T. was born, Father was not adept at taking care of an infant. Mother primarily cared for D.T. with the help of her sister and mother. Mother and her sister criticized Father for his lack of ability and Father became less involved with D.T.'s care.

{¶4}   The parties separated in 2012 and Mother filed for divorce in 2013, which she later dismissed before any orders were issued by the trial court. Mother moved out of the marital home located in Mansfield, Ohio and took D.T. with her. For a period of time, Father did not know where they were living and Mother would not permit Father to have contact with D.T.

{¶5}   At some point in 2013, Father and Mother were communicating. They shared parenting time with D.T. on a three-day/four-day basis for a month and a half to two months.

{¶6} In December 2013, Mother took D.T. to Florida without Father's permission. The boyfriend of maternal grandmother had a residence in Nokomis, Florida. Mother and Father once visited his residence in Florida. Maternal grandmother had a residence in Mansfield, Ohio. Maternal grandmother wanted to start a food truck business that she would operate in Florida during the winter and in Ohio during the summer. Mother was going to help with the business. Mother told Father her move to Florida was for a few months and she would come back to Ohio in September 2014.

{¶7} Mother and D.T. went to Florida where she lived in the home of her mother's boyfriend. Her mother and sister also stayed in the boyfriend's home. Father communicated with D.T. by phone or FaceTime. Father did not visit D.T. in Florida. Father sent D.T. letters and gifts to the address he knew for the boyfriend's home in Florida, but the letters and packages were returned as rejected.

{¶8} In April 2014, Mother came to Ohio for a week with D.T. Mother's intent was to let Father visit with D.T. and move her belongings from Father's house to her mother's house in Mansfield. Mother stayed with Father at his apartment in Mansfield, but Father and Mother argued and Father asked her to leave the apartment. Mother went to a friend's apartment and left with D.T. the next day on her scheduled return flight to Florida.

{¶9} In April 2014, maternal grandmother's boyfriend sold his Nokomis home. Mother moved to boyfriend's new residence in Venice, Florida. Mother did not tell Father that she and D.T. moved.

{¶10} Father was paying the cell phone service for Mother and Mother's sister. Father communicated to Mother and sister that he was going to cancel the cell service due to the cost. Mother and sister did not respond. In July 2014, Father stopped paying

for their cell phone service. Father had no communication with D.T. after July 2014. Father attempted to contact Mother through Mother's family and Mother was aware that Father was attempting to communicate, but she did not respond.

{¶11} In August 2014, Mother moved into her brother's apartment in Jacksonville, Florida. Mother did not inform Father of her new address.

{¶12} Mother had an Ohio driver's license, but obtained a Florida driver's license in 2016. Mother was using maternal grandmother's address in Ohio for automobile insurance purposes. Mother is employed in Florida with a painting company and with her mother's food truck business.

{¶13} Father continues to reside in Mansfield, Ohio. He is employed with Ohio Electric Control in Ashland, Ohio and the National Guard.

{¶14} Father filed a Complaint for Divorce on October 3, 2014. Mother was served by publication because Father did not know Mother's location.

{¶15} Mother filed an Answer on February 9, 2015.

{¶16} On February 12, 2015, Father filed a request for Emergency Temporary Orders and an Order Appointing Guardian ad Litem was filed on March 10, 2015.

{¶17} The trial court issued temporary orders on March 13, 2015 and an agreed judgment entry on temporary orders was issued on April 1, 2015. The temporary orders named Mother as the temporary residential parent and legal custodian. Father was granted visitation with D.T. to take place in Ohio. Mother was to bring D.T. to Ohio and Father was to bring D.T. back to Florida. Father was to pay transportation costs.

{¶18} Father visited with D.T. for the first time since July 2014 in March 2015. The GAL was present at the meeting between the second visit between D.T. and Father in

June 2015. The GAL reported that D.T. told her that he could not love Father because he would take him away from Mother. D.T. told the GAL that his Mother told him that. D.T. made repeated statements to Father and the GAL that he was not supposed to love Father because someone would take him away from Mother. The GAL questioned Mother about the statements and Mother stated D.T. overheard her speaking with her sister.

{¶19} When D.T.'s visitation with Father started, Mother reported D.T. started vomiting at least once a day when he travelled to Ohio. Mother felt it was due to anxiety. Mother reported to the GAL that she took D.T. for mental health counseling. The GAL investigated and found Mother took D.T. to one counseling appointment in September 2015. Mother did not schedule any follow-up counseling sessions. Mother took D.T. to the emergency room and D.T.'s physician referred D.T. to a gastroenterologist, but Mother did not schedule an appointment. The GAL was not able to obtain any further medical information about D.T. because Mother would not provide authorization.

{¶20} At the time the GAL observed D.T., he was four years old. D.T. was not enrolled in preschool. D.T. could attend kindergarten in the 2016-2017 school year. In March 2016, Mother had not registered D.T. for a kindergarten screening.

{¶21} On May 26, 2015, Mother filed a motion to dismiss complaint for lack of jurisdiction and improper venue. Mother filed a second motion to dismiss Father's complaint for lack of jurisdiction and improper venue on April 7, 2016.

{¶22} On April 8, 2016, the trial court held a hearing on Mother's motion to dismiss Father's complaint for lack of jurisdiction. Mother argued Florida was the proper jurisdiction to decide the child custody proceeding.

{¶23} The trial court held a hearing on Father's complaint for divorce on April 8, 11, 13, and 14, 2016. The only issue before the trial court on Father's complaint for divorce was the child custody proceeding.

{¶24} The GAL recommended Father be awarded custody of D.T. The GAL observed that both parents loved D.T. and acted appropriately with him. The GAL felt it was in the best interests of D.T. that the parents stopped fighting, resided in the same community, and followed a shared parenting plan; however, it was not possible. The GAL felt Father would be more likely to cooperate with visitation than Mother would. If Mother was granted sole custody, the GAL felt it would diminish or even eliminate Father's role as parent based on Mother's past behavior.

{¶25} On April 11, 2016, the trial court issued its judgment entry finding that Ohio had jurisdiction to make an initial determination in the child custody proceeding pursuant to R.C. 3127.15(A).

{¶26} On April 14, 2016, the trial court issued a judgment entry modifying its temporary orders to name Father as the temporary residential parent and legal guardian of D.T.

{¶27} On June 14, 2016, the trial court issued its judgment entry on Father's complaint for divorce as to the custody issues. It named Father as the residential parent and legal custodian of D.T. Mother was awarded parenting time.

{¶28} It is from this decision Mother now appeals.

**ASSIGNMENTS OF ERROR**

{¶29} Mother raises two Assignments of Error:

{¶30} "I. THE TRIAL COURT ERRED BY NOT GRANTING DEFENDANT-APPELLANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION AND IMPROPER VENUE AS THE DOMESTIC RELATIONS COURT OF RICHLAND COUNTY LACKED SUBJECT MATTER JURISDICTION AS OUTLINED IN R.C. 3127, ET SEQ.

{¶31} "II. THE TRIAL COURT ERRED IN GRANTING APPELLEE CUSTODY OF THE MINOR CHILD AS IT WAS NOT IN THE CHILD'S BEST INTEREST, WAS TO THE DETRIMENT OF THE CHILD, AND WAS ONLY GRANTED TO PUNISH THE APPELLANT BECAUSE SHE MOVED OUT OF THE STATE OF OHIO."

**ANALYSIS**

**I. Jurisdiction**

{¶32} Mother contends in her first Assignment of Error that the trial court erred when it failed to dismiss Father's complaint for custody of D.T. for lack of jurisdiction over the child.

*The UCCJEA*

{¶33} The UCCJEA was drafted by the National Conference of Commissioners on Uniform State Laws to resolve interstate custody disputes and to avoid jurisdictional competition with courts of other jurisdictions. *Rosen v. Celebrezze,* 117 Ohio St.3d 241, 2008–Ohio–853, 833 N.E.2d 420, ¶ 20–21. Ohio adopted the UCCJEA and codified the law in R.C. Chapter 3127.

{¶34} In making the determination whether to retain jurisdiction over matters pertaining to custody, support, and companionship of a minor child, R.C. 3127.15 provides the trial court with the following jurisdictional grounds:

(A) Except as otherwise provided in section 3127.18 of the Revised Code, a court of this state has jurisdiction to make an initial determination in a child custody proceeding only if one of the following applies:

(1) This state is the home state of the child of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

(2) A court of another state does not have jurisdiction under division (A)(1) of this section or a court of the home state of the child has declined to exercise jurisdiction on the basis that this state is the more appropriate forum under section 3127.21 or 3127.22 of the Revised Code, or a similar statute of the other state, and both of the following are the case:

(a) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(b) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

(3) All courts having jurisdiction under division (A)(1) or (2) of this section have declined to exercise jurisdiction on the ground that a court of this state

is the more appropriate forum to determine the custody of the child under section 3127.21 or 3127.22 of the Revised Code or a similar statute enacted by another state.

(4) No court of any other state would have jurisdiction under the criteria specified in division (A)(1), (2), or (3) of this section.

(B) Division (A) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

(C) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

{¶35} The UCCJEA therefore provides four types of initial child custody jurisdiction: home-state jurisdiction, significant-connection jurisdiction, jurisdiction because of declination of jurisdiction, and default jurisdiction. R.C. 3127.15(A)(1)-(4); *Rosen,* ¶ 31.

{¶36} A party cannot waive a UCCJEA claim because it concerns subject matter jurisdiction and the power of the court to adjudicate the matters of a case. *Rosen,* ¶ 45. A UCCJEA claim can be raised at any time. *Id.*

{¶37} A trial court's decision as to whether to exercise jurisdiction pursuant to the UCCJEA should only be reversed upon a showing of an abuse of discretion. *In re B.M.,* 5th Dist. Holmes No. 11–CA–010, 2011–Ohio–6608, ¶ 8 citing *Hall v. Hall,* 5th Dist. Licking No. 06CA134, 2007–Ohio–2449 citing *Bowen v. Britton,* 84 Ohio App.3d 473, 478, 616 N.E.2d 1217 (4th Dist.1993). The Supreme Court of Ohio has stated that an abuse of discretion "connotes more than an error of law or judgment; it implies that the

court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

*Home State Jurisdiction*

{¶38} The dispute in the present case is whether Ohio is the home state of D.T. The UCCJEA gives jurisdictional priority and exclusive continuing jurisdiction to the "home state" of the child. *Rosen, supra* at ¶ 21. "Home state" means the state in which a child lived with a parent for at least six consecutive months immediately preceding the commencement of a child custody proceeding. A period of temporary absence of any of them is counted as part of the six-month or other period. R.C. 3127.01(B)(7). The statute does not define the meaning of "temporary absence."

{¶39} D.T. was born in Ohio in May 2011. He lived in Ohio until Mother took D.T. to Florida without Father's permission in December 2013. Father remained in Ohio. On October 3, 2014, Father filed the complaint for divorce, requesting custody of D.T. Approximately ten months elapsed between the time Mother took D.T. to Florida and Father filed the complaint for divorce. Mother claims D.T. lived in Florida for six consecutive months before Father filed the custody action in Ohio, therefore Florida is the child's home state and the custody action should be dismissed. Mother has not filed any custody proceedings in Florida.

{¶40} After an evidentiary hearing, the trial court found D.T. was temporarily absent from Ohio from December 2013 to the summer of 2014. The trial court determined the approximate ten-month temporary absence of Mother and D.T. from Ohio should be counted as part of the six-month period immediately preceding the commencement of the child custody proceeding, thereby giving Ohio home state jurisdiction. Our review of the

evidence in the record supports the trial court's determination that D.T. was temporarily absent from Ohio. Under R.C. 3127.15(A), Ohio is the home state for the child.

{¶41} The facts of this case support the trial court's conclusion that when Mother went to Florida with D.T., it was questionable whether the move was intended to be permanent. Mother went to Florida to help her mother with her food truck business. Mother thought they would operate the food truck in Florida during the winter and in Ohio during the summer. Mother told Father that she and D.T. would only be gone a few months and they would return to Ohio in the summer of 2014. Mother did not have independent housing in Florida. Mother, D.T., maternal grandmother, and sister resided at the home of her mother's boyfriend. When the boyfriend sold his home, Mother moved to the boyfriend's new home and then she moved to her brother's apartment. Mother has been at this address since August 2014. D.T. was not enrolled in preschool or daycare while in Florida. In March 2016, the GAL reported Mother had not taken steps towards getting D.T. registered for elementary school in Florida. Mother worked for her mother's food truck business and as a house painter. In April 2014, Mother returned to Ohio with D.T. for a week. One of the purposes of coming to Ohio was to move her belongings from Father's home to her mother's home in Mansfield, Ohio. In July 2014, Mother stopped communicating with Father. In 2016, Mother obtained a Florida driver's license.

{¶42} The trial court held an evidentiary hearing on the issue and determined Mother's move to Florida was meant to be temporary. Based on our review of this record, we cannot find the trial court abused its discretion in its application of the statutory guidelines to the facts of this case to determine Ohio was the home state of the child,

giving Ohio jurisdiction over matters pertaining to custody, support, and companionship of the minor child.

{¶43} Mother's first Assignment of Error is overruled.

## II. Best Interests

{¶44} Mother argues in her second Assignment of Error that the trial court abused its discretion when it named Father as legal custodian and residential parent of D.T.

{¶45} The standard of review in custody cases is whether the trial court abused its discretion. *Davis v. Flickinger,* 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Given the nature and impact of custody disputes, the trial court's discretion will be accorded paramount deference because the trial court is best suited to determine the credibility of testimony and integrity of evidence. *Gamble v. Gamble,* 12th Dist. Butler No. CA2006–10–265, 2008–Ohio–1015. Specifically, "the knowledge a trial court gains through observing witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Miller v. Miller,* 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). Therefore, giving the trial court due deference, a reviewing court will not reverse the findings of a trial court when the award of custody is supported by a substantial amount of credible and competent evidence. *Davis v. Flickinger,* 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶46} R.C. 3109.04 requires a trial court to consider the best interest of the child in making an award of custody incident to a divorce proceeding. R.C. 3109.04(F)(1) provides that, in making this determination, a court is to consider all relevant factors,

including, but not limited to: (a) the wishes of the child's parents; (c) the child's interactions and interrelationship with her parents; (d) the child's adjustment to her home and community; (e) the mental and physical health of all persons involved in the situation; (f) the parent more likely to honor and facilitate visitation and companionship rights approved by the court; (g) whether either parent has failed to make child support payments * * *; and (j) whether either parent has established a residence, or is planning on establishing a residence, outside this state.

{¶47} The judgment entry of the trial court granting custody to Father thoroughly recounted the facts presented during the hearing. The judgment entry also recited the GAL report in great detail. The record supports the trial court's factual findings. In the beginning of D.T.'s life, Father was admittedly not skilled at caring for an infant. Mother and her family, however, did not encourage Father's parenting skills, resulting in Father taking on a lesser parenting role and Mother becoming the primary caregiver. The relationship between Mother and Father was contentious. In 2013, however, Mother and Father worked out their own shared parenting agreement for the care of D.T. Neither party reported issues as to D.T.'s care during this period of time. The arrangement worked until December 2013, when Mother took D.T. to Florida without Father's permission. Father communicated with D.T. until July 2014, when Mother stopped all communication with Father because he would not pay for her cell phone. Father did not know where D.T. was living. When D.T. reunited with Father, D.T. told Father and the GAL that D.T. was not allowed to love Father because someone would take D.T. away from Mother.

{¶48} Despite his parent's marital conflicts, the GAL reported D.T. was a happy child. The GAL was concerned with D.T.'s vomiting issues and Mother's failure to follow

up with a physician or mental health counselor. After multiple visitations with Father, D.T. appeared to be as comfortable with Father as he was in Mother's home. D.T. reported that he missed Mother when he was with Father and missed Father when he was with Mother.

{¶49} Father was assisted in caring for D.T. by his family. He was considering elementary schools for D.T. in Richland and Ashland Counties. At the time of the hearing, Father was living with his girlfriend. It was reported the D.T. had a good relationship with Father's girlfriend.

{¶50} There was no dispute in this case that Mother and her family fiercely loved D.T. Father also loved D.T. and wanted to have a relationship with his child. The GAL noted, however, Mother's love for D.T. appeared to have no room for Father's relationship with D.T. The overriding concern of the GAL was that if Mother was named legal custodian and residential parent of D.T., Mother would prevent Father from having a relationship with D.T. based on Mother's past behavior. Father would be more likely to honor and facilitate visitation and companionship as ordered by the trial court.

{¶51} The trial court found it was in the best interests of D.T. that Father be named the legal custodian and residential parent. R.C. 3109.04(F) provides the court with discretion to weigh the relevant factors and determine how those factors apply to the child's best interests. *Lutton v. Briggs,* 5th Dist. Stark No. 2014CA00214, 2015–Ohio–1910. Given the nature and impact of custody disputes, the trial court's discretion will be accorded paramount deference because the trial court is best suited to determine the credibility of testimony and integrity of evidence. *Gamble v. Gamble,* 12th Dist. Butler No. CA2006–10–265, 2008–Ohio–1015. Specifically, "the knowledge a trial court gains

through observing witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Miller v. Miller,* 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). Upon review of the record, we find there is competent and credible evidence to support the trial court's decision with regards to the designation of Father as the legal custodian and residential parent.

{¶52} Mother's second Assignment of Error is overruled.

## CONCLUSION

{¶53} The judgment of the Richland County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Hoffman, J. and

Wise, John, J., concur.