[Cite as *Hignight v. Knepp*, 2024-Ohio-1708.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio, ex rel. Stephanea
Hignight

    Relator

v.

Linda M. Knepp

    Respondent

Court of Appeals No.  L-23-1305

**DECISION AND JUDGMENT**

Decided:  May 3, 2024

* * * * *

Stephen Szuch, for relator.

Julia R. Bates, Lucas County Prosecuting Attorney, and
John A. Borell and Kevin A. Pituch, Assistant Prosecuting
Attorneys, for respondent.

Beverly J. Cox, for amicus curiae.

* * * * *

**MAYLE, J.**

**{¶ 1}** This case is before the court on the motion for summary judgment filed by

respondent, Judge Linda Knepp, of the Lucas County Court of Common Pleas, Juvenile

Division ("juvenile court"), asking us to dismiss the complaint for a writ of prohibition

filed by relator, Stephanea Hignight.  Hignight filed this prohibition action to prevent

Judge Knepp from proceeding with a custody action filed by amicus curiae, Jill Hoffman, because, she claims, Judge Knepp lacks jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). For the following reasons, we grant Judge Knepp's motion.

## I. Background and Facts

{¶ 2} Hignight and Hoffman were in a romantic relationship that ended sometime in mid-2020; Hoffman says it ended in "the summer of 2020," which Hignight pinpoints as July. While they were together, they fostered two children, Z.H.-H. and M.H.-H, and decided to adopt them. According to Hoffman, she and Hignight could not adopt the children because they were unmarried, and would have to wait six months after marrying to adopt the children, so "[o]n the advice of counsel, . . ." they decided to have Hignight adopt the children, with Hoffman petitioning for stepparent adoptions after she and Hignight married. However, they ended their relationship before Z.H.-H.'s adoption was finalized on August 3, 2020, and M.H.-H.'s was finalized on April 12, 2021. Hignight is the only parent listed in the children's adoption decrees, but the decrees show that the children's surname includes both Hignight's last name and Hoffman's last name, despite the women ending their relationship before either adoption was final.

{¶ 3} After Hignight and Hoffman broke up, Hoffman claims that they continued to coparent the children. She said that Hignight allowed her to have "frequent, meaningful" parenting time with the children until September 2021, when she filed the custody action underlying this original action. After that, Hignight "severely limited"

2.

Hoffman's contact with the children. According to Hignight, however, Hoffman had "sporadic and infrequent contact" with the children after July 2020, and was "on military duty" from October 2021 to July 2022.

{¶ 4} On September 17, 2021, Hignight sent Hoffman a text message telling her that she and her now-wife, Rachael Varga, "are combining [their] families under one roof and are looking at homes together in the Ypsi[lanti, Michigan] area." However, according to Hignight, she and the children actually moved to Michigan in June 2021. Hoffman contends that Hignight and the children moved to Michigan in October 2021.

{¶ 5} On September 22, 2021, five days after receiving that message, Hoffman filed the underlying custody case, juvenile court case No. 21286267. She asked for custody of the children, or, alternatively, for parenting time. At some point, the juvenile court granted Hoffman temporary visitation. The juvenile court case is still pending.

{¶ 6} Two years later, in August 2023, Hignight and Varga married. Three weeks after marrying, they filed petitions for a stepparent adoption of each child in the 22nd Judicial Circuit, Family Division, in Washtenaw County, Michigan. Hoffman moved to intervene in the Michigan adoption cases, and it appears that these cases remain pending.

{¶ 7} After filing the Michigan adoption petitions, Hignight filed a motion to stay the juvenile court proceedings and terminate the temporary visitation orders. Judge Knepp denied this motion. Hignight has also filed a motion in the juvenile court to dismiss the custody case based on lack of jurisdiction, which Judge Knepp denied, and an

3.

affidavit of disqualification of Judge Knepp in the Ohio Supreme Court, which Chief Justice Kennedy denied.

{¶ 8} A trial on Hoffman's custody complaint was scheduled for the end of January 2024, but on December 26, 2023, Hignight filed her prohibition complaint. In it, she argued that she and the children moved to Michigan in June 2021, so Ohio was not the children's home state on September 22, 2021, when Hoffman filed the custody complaint.[1] She also argued that Hoffman was not a "person acting as a parent" due to her limited contact with the children after July 2020. Thus, the jurisdictional provisions of the UCCJEA in R.C. 3127.15(A) did not apply, and Judge Knepp did not have subject-matter jurisdiction over the case.

{¶ 9} On December 29, 2023, we granted an alternative writ against Judge Knepp because it appeared from Hignight's complaint that Judge Knepp lacks subject-matter jurisdiction over the custody case under the UCCJEA. In that order, we rejected Hignight's argument that the Ohio Supreme Court's decision in *State ex rel. Davis v. Kennedy*, 2023-Ohio-1593, which determined that an Ohio probate court's jurisdiction over adoption proceedings is superior to an Ohio juvenile court's jurisdiction over parenting-time proceedings, did not apply to a jurisdictional dispute between an Ohio juvenile court and an out-of-state court. We also dismissed the juvenile court as a respondent because the court itself cannot sue or be sued.

---

[1] We discuss the litigants' factual claims and evidentiary materials in greater detail in our analysis.

{¶ 10} Soon after, Hoffman, a nonparty, requested leave to file an amicus curiae brief, which we granted. In her amicus brief, Hoffman presented evidence supporting her belief that Judge Knepp has jurisdiction because Hignight and the children lived in Ohio on September 22, 2021, and showing that Hignight "clearly viewed Ms. Hoffman as a person acting as a parent of the minor children." She contends that the facts of the case make Ohio the children's home state under the UCCJEA, which gives Judge Knepp subject-matter jurisdiction over the custody case.

{¶ 11} On February 5, 2024, Judge Knepp filed her motion for summary judgment, claiming that Hignight is not entitled to a writ of prohibition. The crux of her arguments is that Hignight admitted to the fact that Ohio was the children's home state at the time Hoffman filed the custody complaint, so she cannot change her mind and claim that Ohio was *not* their home state.

{¶ 12} On February 26, 2024, Hignight filed an opposition to Judge Knepp's motion. In it, she argues that parties cannot waive the issue of subject-matter jurisdiction, so the fact that she challenged Judge Knepp's subject-matter jurisdiction two years after the case was filed is of no consequence. She also claims that her former attorney's admission in October 2021 that Ohio was the children's home state, and her statement in 2022 that she moved to Michigan in October 2021, were mistakes that cannot support a finding of judicial estoppel. She also contends that "facts that could divest jurisdiction from . . ." Judge Knepp remain to be determined, so summary judgment is not appropriate.

{¶ 13} The matter is now decisional.

## II. Law and Analysis

{¶ 14} In her motion, Judge Knepp argues that we should dismiss Hignight's complaint because she has failed to show that Judge Knepp patently and unambiguously lacks jurisdiction under the UCCJEA. While Judge Knepp acknowledges that the parties cannot consent to a court having subject-matter jurisdiction over a case if that jurisdiction is otherwise lacking, she contends that Hignight is estopped from claiming that Ohio is not the children's home state—which is necessary to confer jurisdiction under the UCCJEA—because she admitted, through counsel, that Ohio was the children's home state at the time Hoffman filed the custody case. Judge Knepp also argues that the doctrine of judicial estoppel applies because Hignight took a contrary position under oath at a prior proceeding, which Knepp accepted and applied in reaching her determination that she has jurisdiction.

{¶ 15} In her response, Hignight argues that Judge Knepp's motion is based on two misstatements, which should not stop her from challenging the juvenile court's subject-matter jurisdiction. She contends that her prior attorney made a mistake when counsel stated at the injunction hearing that Ohio was the children's home state, and she—a layperson without knowledge of the legal significance of a child's "home state"—should not be held responsible for that mistake. She also claims that her statement at a different juvenile court hearing that she moved to Michigan in "October of last year" (i.e., October 2021) was a misstatement; she was referring to when she sold her house in

6.

Toledo, not when she moved to Michigan. Hignight further argues that judicial estoppel does not apply because challenging the juvenile court's jurisdiction does not impugn the court's integrity. Finally, she argues that genuine issues of material fact remain to be litigated, i.e., "consideration of facts that could divest jurisdiction from . . ." Judge Knepp, and that her single misstatement about moving to Michigan in October 2021 is far outweighed by the evidence she has supplied showing that she moved to Michigan before Hoffman filed the custody complaint.

## A. Summary-judgment standard

{¶ 16} A court can grant a motion for summary judgment only when the moving party demonstrates:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

*Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66 (1978); Civ.R. 56(C).

{¶ 17} The party seeking summary judgment must specifically delineate the basis upon which the motion is brought and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996); *Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988), syllabus. When a

7.

properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79 (1984). A "material" fact is one that would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 827 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

### B. Estoppel does not bar Hignight's arguments.

{¶ 18} As a preliminary matter, we reject Judge Knepp's estoppel arguments. First, she argues that Hignight's former attorney "conceded" that Ohio was the children's home state. While parties to a case may concede facts that, if believed, grant a trial court jurisdiction, they cannot create subject-matter jurisdiction by any such concession, and a court cannot be bound by "any agreement, stipulation, or concession from the parties as to what the law requires." *State ex rel. Steffen v. Myers*, 2015-Ohio-2005, ¶ 16, citing *State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 2009-Ohio-3657, ¶ 18; *Mullinix v. Mullinix*, 2023-Ohio-1053, ¶ 20 (10th Dist.) ("Parties to an action may not confer jurisdiction on a court by mutual consent. . . . They *may*, however, stipulate to facts that are sufficient to confer jurisdiction on the court." (Emphasis sic.)). Whether a statute is applicable to a case is a legal issue for the court to decide. *See Steffen* at ¶ 16.

8.

{¶ 19} Determining if Ohio is a child's home state requires a court to decide whether the facts presented by the parties fit the definition of "home state" in R.C. 3127.01(B)(7). This is a legal issue that the court must decide—not a factual issue that the parties can stipulate to. Here, Hignight's former attorney conceded a legal conclusion (i.e., that Ohio was the home state), which is not binding on Judge Knepp and cannot, by itself, give Judge Knepp jurisdiction that does not otherwise exist. *Steffen* at ¶ 16; *Mullinix* at ¶ 20. Although our conclusion might be different if Hignight's former attorney had conceded that the children lived in Ohio at the time of filing—which is a *fact* underlying the *legal conclusion* that Ohio is the home state—that is not the record before us. As it stands, the former attorney stated a legal conclusion, which cannot resolve the jurisdictional dispute before us.

{¶ 20} Further, applying the doctrine of judicial estoppel is not warranted here. "Judicial estoppel precludes a party from taking a position inconsistent with a position that it successfully and unequivocally asserted in a prior judicial proceeding." *Independence v. Office of the Cuyahoga Cty. Executive*, 2014-Ohio-4650, ¶ 29. It is intended to prevent a party "'from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment.'" *Greer-Burger v. Temesi*, 2007-Ohio-6442, ¶ 25, quoting *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir.1998). It is an equitable doctrine that a court has discretion to invoke. *Independence* at ¶ 29.

9.

**{¶ 21}** Assuming that the doctrine of judicial estoppel fits this case, we decline to apply it. There is no evidence that Hignight's former attorney told the juvenile court that Ohio was the children's home state with some nefarious intent, or that Judge Knepp relied on the former attorney's representation to determine that she had jurisdiction. In fact, in her affidavit, Judge Knepp outlines the factors that she considered in determining that she has home-state jurisdiction over the custody case, which do not include former counsel's representation. Based on the scant evidence regarding these statements and Hignight's alleged prior legal position, we do not believe that this is a case in which judicial estoppel is appropriate.

### C. Hignight has an adequate remedy in the ordinary course of law.

**{¶ 22}** In her motion, Judge Knepp seeks summary judgment because, she contends, Hignight is not entitled to a writ of prohibition against her. "The purpose of a writ of prohibition is to restrain inferior courts from exceeding their jurisdiction." *State ex rel. Kerr v. Kelsey*, 2019-Ohio-3215, ¶ 5 (6th Dist.), citing *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 73 (1998). To be entitled to a writ of prohibition, a relator must establish that "(1) [the respondent] is about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denial of the writ will cause injury for which no other adequate remedy in the ordinary course of law exists." *State ex rel. Henry v. McMonagle*, 87 Ohio St.3d 543, 544 (2000). However, if the respondent patently and unambiguously lacks jurisdiction, the relator need not demonstrate that she lacks an adequate remedy. *Davis*, 2023-Ohio-1593, at ¶ 10.

10.

{¶ 23} A writ of prohibition will not issue if the relator has an adequate remedy in the ordinary course of law. *State ex rel. Smith v. Hall*, 2016-Ohio-1052, ¶ 8. "In the vast majority of cases, 'a court having general subject-matter jurisdiction can determine its own jurisdiction, and a party contesting that jurisdiction has an adequate remedy by appeal.'" *Schlegel v. Sweeney*, 2022-Ohio-3841, ¶ 6, quoting *State ex rel. Plant v. Cosgrove*, 2008-Ohio-3838, ¶ 5. In other words, "[a]bsent a patent and unambiguous lack of jurisdiction, a relator's ability to appeal generally bars relief in prohibition." *State ex rel. Harris v. Capizzi*, 2022-Ohio-3661, ¶ 10 (2d Dist.), citing *Johnson v. Sloan*, 2018-Ohio-2120, ¶ 24. A party can appeal a juvenile court's determination that it has jurisdiction under the UCCJEA and any resulting custody orders, so a party seeking a writ of prohibition has an adequate remedy in the ordinary course of law. *State ex rel. M.L. v. O'Malley*, 2015-Ohio-4855, ¶ 9.

{¶ 24} Here, Hignight can appeal Judge Knepp's jurisdictional determination when the custody case concludes. *See id.* Neither of the parties argues otherwise. Thus, unless Judge Knepp patently and unambiguously lacks jurisdiction, Hignight has an adequate remedy in the ordinary course of law and is not entitled to a writ of prohibition as a matter of law.

**D. Judge Knepp does not patently and unambiguously lack jurisdiction.**

{¶ 25} When a relator has an adequate remedy, there is a "narrow exception" that entitles her to a writ of prohibition when the respondent patently and unambiguously lacks jurisdiction over the matter. *Ohio High School Athletic Assn. v. Ruehlman*, 2019-

11.

Ohio-2845, ¶ 6. Thus, if Judge Knepp demonstrates that there are no genuine, material factual issues regarding whether she patently and unambiguously lacks jurisdiction under the UCCJEA, she is entitled to summary judgment as a matter of law, and we must grant her motion.

{¶ 26} The jurisdictional issue underlying this case involves the UCCJEA, adopted in R.C. Chapter 3127, which "address[es] interstate recognition and enforcement of child custody orders . . . ." R.C. 3127.01(A). Whether an Ohio court has jurisdiction over a custody case that involves, or potentially involves, custody determinations from other states is outlined in R.C. 3127.15(A)(1) to (4).

{¶ 27} As used in the UCCJEA, "initial custody determination" means "the first child custody determination concerning a particular child." R.C. 3127.01(B)(8). A "child custody determination" is, generally speaking, a court order that "provides for legal custody, physical custody, parenting time, or visitation with respect to a child." R.C. 3127.01(B)(3). A child's "home state" is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of a child custody proceeding . . . ." R.C. 3127.01(B)(7). Any "temporary absence" is counted as part of the six-month period. *Id.* Finally, a "person acting as a parent" is someone other than a parent who (1) at the time the custody action is filed, has physical custody of the child or, within one year before filing, had physical custody of the child for six consecutive months (including any temporary

12.

absence) and (2) has been awarded or claims a right to legal custody of the child. R.C. 3127.01(B)(13).

{¶ 28} Under R.C. 3127.15, an Ohio court has jurisdiction to make an initial custody determination only if, as potentially applicable here, (1) Ohio is the child's home state on the day the custody action is filed; (2) Ohio was the child's home state within six months before filing and the child is no longer in Ohio, but a parent or person acting as a parent still lives here; or (3) another state's court does not have home-state jurisdiction, as defined in R.C. 3127.15(A)(1), the child and at least one parent or person acting as a parent have a "significant connection" with Ohio that is beyond mere physical presence, and there is "substantial evidence" in Ohio regarding the child's "care, protection, training, and personal relationships." R.C. 3127.15(A)(1)-(2). The rules outlined in R.C. 3127.15(A) are "the exclusive jurisdictional basis . . ." for an Ohio court to make a child custody determination under the UCCJEA. R.C. 3127.15(B).

{¶ 29} The dispute at the heart of this matter is whether the children lived in Ohio on September 22, 2021, the day Hoffman filed her custody complaint. If they did, Judge Knepp has subject-matter jurisdiction because Ohio is the children's home state; if they did not, Judge Knepp's subject-matter jurisdiction is contingent upon Hoffman's status as a "person acting as a parent," as defined in R.C. 3127.01(B)(13)—a factual matter that Judge Knepp has not yet been able to decide. The record before us shows that Judge Knepp arguably has jurisdiction over the custody case, which means that any jurisdictional defects are not patent and unambiguous.

13.

{¶ 30} Hignight and Hoffman have provided conflicting information about where, exactly, the children lived between June and October 2021. Hignight says that she and the children moved to Michigan in June 2021, where they lived in Varga's house until December 2021, when she and Varga moved to a house that they bought together. In support of her position, she submits:

- records from the children's Michigan daycare showing that they attended the daycare on 12 days over a period of four weeks beginning June 14, 2021;

- photos that purport to show Hignight's stepson's bedroom without bunkbeds in March 2021, Z.H.-H. in the stepson's room with bunkbeds in mid-July 2021, when Hignight and Varga "had just gotten bunk beds to begin a trial month of living together . . .[,]" and her stepson in one of the bunkbeds in August 2021;

- a letter regarding her older daughter's enrollment in a Michigan school beginning August 30, 2021, and the daughter's attendance records for the 2021-2022 school year;

- evidence that she listed her Toledo house for sale on September 13, 2021, accepted an offer to purchase the house on September 19, 2021, and deeded the house to the new owner on October 22, 2021;

- two photos taken on behalf of her real estate agent for purposes of listing the Toledo house, which the agent received from the photographer on September 13, 2021;

14.

- a bank statement for August 18 to September 17, 2021, that lists her Toledo address and purports to show that she paid to change her address; and

- an agreement that she signed with a Michigan real estate agent on September 8, 2021;

{¶ 31} On the other hand, Hoffman claims that Hignight and the children did not move to Michigan until sometime after September 22, 2021. To support that position, Hoffman submitted:

- a text message from Hignight on September 17, 2021, telling her that Hignight and Varga "are combining [their] families under one roof and are looking at houses together in the Ypsi[lanti] area[;]"

- the ex parte injunction the juvenile court magistrate issued on September 22, 2021, to prevent Hignight from moving the children out of Lucas County;

- a summary of Z.H.-H.'s time at daycare on August 10, 2021, which purportedly came from the children's Ohio daycare;

- an email that she sent to the billing department of the children's Ohio daycare on August 4, 2021, asking to change payment arrangements;

- text messages from Hignight on August 5, 2021, discussing the cost of the children's Ohio daycare and how Hoffman could pay her share;

- an email from the Ohio daycare showing that she paid over $2,000 to the daycare between August 13 and December 31, 2021;

15.

- a text message from Hignight on September 1, 2021, asking her about daycare payment;

- text messages from September 23, 2021—the day Hignight was personally served with the custody complaint—in which Hignight said that she was at her Toledo house, and Hoffman arranged to drop off clothes;

- text messages from September 24, 2021, in which she says that the children were not at the Ohio daycare when she went to pick them up;

- text messages from October 22, 2021, in which Hignight said that she and the children "are in town tonight . . ." and informed Hoffman that it was the children's last day at the Ohio daycare; and

- a portion of the transcript from a September 29, 2022 juvenile-court hearing in which Hignight said that she moved to Michigan in "October of last year"—i.e., October 2021.

{¶ 32} Although Judge Knepp did not submit independent evidence regarding the children's residence at the time of filing, she explains in her affidavit that she believes she has jurisdiction based on (1) the address Hoffman provided for Hignight in her initial filings, (2) Hoffman's representation in her UCCJEA affidavit that the children were living with both her and Hignight, (3) Hignight being personally served in Lucas County, and (4) Hignight's failure to claim or imply that she had moved to Michigan at the October 2021 injunction hearing. Judge Knepp also said that, due to procedural delays, she has not yet been able to determine whether Hoffman is a person acting as a parent.

16.

**{¶ 33}** When all of this information is considered together, it is clear that there are facts in dispute regarding the children's residence on September 22, 2021. If we were deciding a motion for summary judgment on the merits of the underlying custody case, this would mandate that we deny the motion. However, we are deciding a motion for summary judgment on Hignight's claim that she is entitled to a writ of prohibition, so we must decide whether the conflicting evidence about the children's residence raises a genuine issue of material fact about whether Judge Knepp patently and unambiguously lacks jurisdiction over the custody case. *Davis*, 2023-Ohio-1593, at ¶ 10.

**{¶ 34}** When a court arguably has jurisdiction under a statute, any lack of jurisdiction is not patent and unambiguous. *State ex rel. Kelleys Island School Dist. Bd. of Edn. v. Ohio Dept. of Edn.*, 2024-Ohio-285, ¶ 36, citing *M.L.*, 2015-Ohio-4855, at ¶ 15, 17. That is, lack of jurisdiction is patent and unambiguous if there is "'no set of facts under which a trial court or judge could have jurisdiction over a particular case[.]'" (Brackets sic.) *State ex rel. Morrow Cty. Job & Family Servs. v. Morrow Cty. Court of Common Pleas*, 2022-Ohio-2549, ¶ 23 (5th Dist.), quoting *Leatherworks Partnership v. Stuard*, 2002-Ohio-6477, ¶ 19 (11th Dist.). But if a judge generally has subject-matter jurisdiction over that particular type of case and the judge's authority to hear the case underlying a prohibition action depends on the specific facts before the judge, "'the jurisdictional defect is not obvious and the court/judge should be allowed to decide the jurisdictional issue.'" *Id.* That is the case here.

17.

{¶ 35} There is conflicting evidence about whether Ohio is the children's home state based on their residence at the time the custody case was filed. For example, although Hignight claims she moved to Michigan in June 2021, (1) she did not tell Hoffman that she intended to move to Michigan to live with Varga until September 17; (2) the evidence Hignight submitted with her complaint indicates that she and Varga began a "trial month of living together . . ." in the middle of July; (3) there is evidence the children attended a Michigan daycare about half of the days from mid-June to mid-July, but there is also evidence that they attended an Ohio daycare that Hoffman helped pay for until late October; (4) the Michigan daycare's "Child Information Sheet" for M.H.-H., which lists a Michigan address for M.H.-H. and Hignight and includes the notes "Lives With[,]" "Emergency[,]" and "Pickup" with Hignight's contact information, also includes Varga's name with the notes "Emergency" and "Pickup"—but not "Lives With"—and without an address; (5) the bank statement that Hignight used to claim that she paid a fee to have her address changed lists her Toledo address; (6) Hignight testified in 2022 that she moved to Michigan in October 2021, although she now says that was a misstatement; and (7) Hignight (who was represented by counsel) did not tell the court, explicitly or implicitly, that she was already living in Michigan during the hearing at which Hoffman was attempting to obtain an injunction preventing Hignight from moving to Michigan.

{¶ 36} Under these facts, it is far from clear that Judge Knepp patently and unambiguously lacks home-state jurisdiction under the UCCJEA. That is, she *might* have subject-matter jurisdiction, depending on how the facts of the matter develop and are

18.

interpreted. When that is the case, the narrow exception for a clear and obvious lack of jurisdiction does not apply. *Ruehlman*, 2019-Ohio-2845, at ¶ 6; *Morrow Cty.* at ¶ 23; *Leatherworks* at ¶ 19; *Kelleys Island*, 2024-Ohio-285, at ¶ 36. Moreover, R.C. Ch. 3127 generally gives juvenile courts jurisdiction to determine interstate custody disputes (assuming the necessary factual prerequisites are met), so Judge Knepp is able to determine her own jurisdiction. *Schlegel*, 2022-Ohio-3841, at ¶ 6. And if Hignight ultimately disagrees with Judge Knepp's resolution of the facts and determination of jurisdiction, she can appeal the judge's final decision. *M.L.*, 2015-Ohio-4855, at ¶ 9.

{¶ 37} Based on the evidence before us, we find that no genuine issues of material fact remain on the issue of whether Judge Knepp patently and unambiguously lacks jurisdiction, Judge Knepp is entitled to judgment as a matter of law, and reasonable minds can reach only one conclusion regarding the issue of whether Judge Knepp patently and unambiguously lacks jurisdiction. Accordingly, Judge Knepp is entitled to summary judgment.

### III.  Conclusion

{¶ 38} In sum, Hignight has an adequate remedy in the ordinary course of law by appealing Judge Knepp's jurisdiction determination when the custody case concludes. Further, the exception to showing lack of an adequate remedy when a respondent patently and unambiguously lacks jurisdiction is inapplicable. The parties' conflicting evidence regarding the children's residence on the day the complaint was filed shows that Judge Knepp arguably has jurisdiction under the UCCJEA, so her lack of jurisdiction—if any—

19.

is not patent and unambiguous, and Judge Knepp should have the opportunity to determine her own jurisdiction based on the facts of the case. Taken together, this shows that no genuine issues of material fact remain and Judge Knepp is entitled to summary judgment as a matter of law. Therefore, Judge Knepp's motion for summary judgment is granted, Hignight's complaint for a writ of prohibition is dismissed, and our prior stay of the proceedings in the underlying custody case, case No. 21286267, is lifted.

{¶ 39} Hignight is ordered to pay the costs of this proceeding pursuant to App.R. 24.

{¶ 40} It is so ordered.

{¶ 41} The clerk is directed to serve upon the parties, within three days, a copy of this decision in a manner prescribed by Civ.R. 5(B).

Writ dismissed.

Thomas J. Osowik, J.

Christine E. Mayle, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.