[Cite as *S.P. v. B.M.*, 2025-Ohio-778.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

S.P.

     Appellee

v.

B.M.

     Appellant

Court of Appeals No. WM-23-013

Trial Court No. AD20204072

**<u>DECISION AND JUDGMENT</u>**

Decided: March 7, 2025

* * * * *

Michael A. Shaffer, for appellee.

Michael H. Stahl, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, B.M. ("mother"), appeals the October 10, 2023 judgment of the Williams County Court of Common Pleas, Juvenile Division, denying her motions to dismiss for lack of subject-matter jurisdiction and to transfer jurisdiction over this interstate custody action to Texas. Because the trial court lacks subject-matter jurisdiction, we reverse.

**I. Background and Facts**

{¶ 2} On July 28, 2020, appellee, S.P. ("father"), filed a complaint seeking to establish a parent-child relationship between him and the parties' minor child, E.H., and

seeking custody of E.H.  In his complaint, father alleged that he and E.H. were permanent residents of Ohio, and that mother had "recently established temporary residency in the State of Texas . . . ."  Along with his complaint, father filed a motion for temporary custody in which he alleged that E.H. had been under his care and control in Ohio since May 30, 2020.  Father also filed a parenting proceeding affidavit, required by R.C. 3127.23(A), in which he averred that E.H. had lived with mother in Ohio from 2015 until December 2019 when E.H. and mother moved to Texas.  E.H. lived in Texas with mother until May 30, 2020, when he returned to Ohio to live with father.  Although mother and E.H. had been living in Texas, father claimed that they had "[n]o residency established" in that state.

{¶ 3} According to the "magistrate's decision and judgment entry" and the "magistrate's temporary order" filed after the parties' first hearing in September 2020, the parties reached an agreement regarding father's request for temporary custody, and a parent-child relationship was established between father and E.H.  In the magistrate's decision establishing the parent-child relationship, the magistrate noted that mother was not represented by counsel at the hearing, and that "[t]he Court inquired as to her desire to proceed without counsel and consent to the jurisdiction of the Court."  Although mother "indicated she was willing to proceed without benefit of counsel[,]" the magistrate's decision does not specifically say that mother "consented" to the court's jurisdiction or that the magistrate found that the court had jurisdiction over the case.

{¶ 4} In a judgment entry filed after a January 2021 hearing, the trial court found that "it has jurisdiction over the parties and the subject matter . . ." of the case.

2.

**{¶ 5}** The parties' next hearing was in May 2021. According to the magistrate's decision from that hearing, the parties reached an agreement that resolved father's complaint. The agreement made mother E.H.'s residential parent and legal custodian and gave her "primary parental rights and responsibilities . . . ." It also outlined father's parenting time schedule and terms regarding the parties' financial responsibilities related to E.H.'s travel, health, and education expenses. In the decision, the magistrate specifically found that the court "has jurisdiction over the parties and the subject matter."

**{¶ 6}** Mother did not file a transcript of any of these hearings in this appeal.

**{¶ 7}** Almost two years later, in March 2023, father reactivated the case in the trial court by filing a contempt motion against mother because she failed to return E.H. to Ohio for his parenting time during spring break.

**{¶ 8}** The next day, on March 16, 2023, father filed a "MOTION TO ESTABLISH CONTINUING HOME STATE JURISDICTION" asking the trial court to determine that Ohio remained E.H.'s home state under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). Father's filing was prompted by mother filing a custody action in Texas. Father supported his motion with a summons issued by the 128th District Court of Orange County, Texas, advising him that mother had filed a petition to modify a parent-child relationship in that court and a temporary restraining order prohibiting him "from possession of or access to [E.H.] until further order of the [Texas] Court."

**{¶ 9}** Two months later, mother filed a "Motion to Recognize Texas as Minor Child's Home State and Dismiss" and a "Motion to Decline Jurisdiction in Favor of

3.

Transfer Jurisdiction to the 128th Judicial District of Orange County, Texas[.]" In her motion to recognize Texas as E.H.'s home state, mother argued that E.H. had resided in Texas since November 2019 and was only visiting Ohio when father filed his custody complaint. To support her argument, mother included a parenting proceeding affidavit that she filed as part of her Texas custody action. In the affidavit, mother averred that she and E.H. had lived at various addresses in Texas since November 16, 2019. In her motion to transfer jurisdiction, mother argued that Texas was a more convenient forum for litigating this case and transferring jurisdiction to Texas under R.C. 3127.21(A) was proper because E.H. lived there, she had filed her own custody action there, the Texas court was familiar with allegations of abuse against father, and any witnesses she might call in support of modifying the custody arrangements were in Texas.

{¶ 10} Before the hearing on the parties' motions, the magistrate asked the parties to file prehearing briefs addressing (1) whether the trial court had home state jurisdiction when father filed his complaint in 2020; (2) if it did not, whether mother could raise the issue of the court's subject-matter jurisdiction in 2023 when she did not question it in 2020 (i.e., at the time the court first established jurisdiction); (3) if Ohio was E.H.'s home state, whether the trial court should transfer jurisdiction to Texas as a more convenient forum; and (4) the procedure the court should follow if it lacked jurisdiction or decided to transfer the case to Texas.

{¶ 11} In his brief, father argued that the trial court knew at the time it established jurisdiction in its May 2021 order adopting the parties' custody agreement that (1) mother's and E.H.'s time in Texas was temporary, (2) father and E.H. were Ohio

4.

residents when he filed his complaint and had significant connections to Ohio, and (3) there was substantial evidence related to E.H. in Ohio. Combined, these factors showed that Ohio had jurisdiction over the case under R.C. 3127.15(A). Father believed that the court correctly exercised its jurisdiction and made appropriate orders and findings without objections from mother. According to father, if mother disagreed with the trial court's exercise of jurisdiction, she should have objected to or appealed the magistrate's decisions and trial court's decisions in 2021 or sought a writ of prohibition to prevent the trial court from continuing to exercise jurisdiction. Although father acknowledged that "jurisdiction is not waivable[,]" he argued that "by failing to object or appeal, [mother] has lost her right to a de novo hearing on the jurisdiction issue." Ultimately, father's position was that mother "has no right to now raise jurisdiction." Regarding the transfer issue, after reviewing the statutory factors in R.C. 3127.21(B)(1)-(8), father argued that "[t]he criteria set forth supports Ohio's continued exclusive jurisdiction in this case."

{¶ 12} In her brief, mother first pointed out that subject-matter jurisdiction can never be waived and can be raised at any time. She also noted that she could not "consent to the court exercising [jurisdictional] power that it does not have . . . ." She argued that the trial court lacked subject-matter jurisdiction over the case because Ohio was not E.H.'s home state. E.H. had lived in Texas for six consecutive months for a period that ended within the six months before father filed his complaint, which made Texas E.H.'s home state, and, because E.H. had a home state, none of the other jurisdictional options in R.C. 3127.15(A) applied. Since the trial court issued its May 2021 judgment entry without subject-matter jurisdiction, its order was void. Regarding

5.

the transfer issue, mother argued that Texas was the more convenient forum under the statutory factors.

{¶ 13} At the hearing before the magistrate, mother testified that she moved to Texas on November 18, 2019. According to her, father knew that her move to Texas with E.H. was intended to be permanent. Soon after arriving in Texas, she enrolled E.H. in a Texas public school, and he was still attending school in Texas. The enrollment records from E.H.'s primary school that mother offered into evidence show that E.H. was enrolled in a Texas school on November 21, 2019. Mother had applied for and received a temporary restraining order from a Texas court based on allegations of abuse that happened during E.H.'s earlier visits with father. The restraining order prevented mother from sending E.H. to Ohio for father's scheduled parenting time.

{¶ 14} Father testified that he that believed mother's move to Texas was temporary. He only learned that it was permanent approximately one year after she moved, around Thanksgiving or Christmas of 2020—months after he had filed his complaint in July 2020. E.H. was home for the summer after completing a year of school in Texas when father filed his complaint. He thought that E.H. was going to be attending school in Ohio in the fall of 2020. Father denied the abuse allegations and testified that he maintained an appropriate home environment for E.H. He also claimed that mother did not tell him about the Texas restraining order until after E.H.'s flight was supposed to land, leaving father at the airport trying to find E.H. without knowing that E.H. had not boarded the flight.

6.

{¶ 15} In her decision, the magistrate concluded that mother's failure to appeal the trial court's earlier determination that it had subject-matter jurisdiction precluded her from now challenging the trial court's 2021 jurisdiction decision by filing a motion, and the only way she could challenge the trial court's subject-matter jurisdiction was by filing a writ of prohibition. Therefore, the magistrate denied mother's motion to dismiss. Then, after weighing the factors in R.C. 3127.21(B), the magistrate determined that Texas was a more convenient forum. Accordingly, the magistrate declined to continue jurisdiction in Ohio, granted mother's motion to transfer jurisdiction, and denied father's motion to continue jurisdiction in Ohio.

{¶ 16} Both parties filed objections to the magistrate's decision. In his objections, father argued that the magistrate incorrectly determined that Texas was a more convenient forum by misapplying the statutory transfer factors because the factors, when properly considered, warranted the trial court's continued jurisdiction over his complaint. In her objections, mother argued that the facts showed that Texas was E.H.'s home state at the time father filed his complaint, so no court in Ohio could ever have exercised subject-matter jurisdiction over father's claims—rendering the trial court's initial custody determination void, regardless of whether she appealed the court's initial exercise of jurisdiction.

{¶ 17} The trial court overruled mother's objections and sustained father's objections. Regarding the magistrate's subject-matter jurisdiction determination, the court found that Ohio was E.H.'s home state at the time father filed his complaint, and the court properly exercised jurisdiction because mother did not (1) object to the court's

7.

original conclusion that it had subject-matter jurisdiction, (2) appeal the court's original exercise of jurisdiction, and (3) intend to permanently reside in Texas at the time father filed his complaint. The court then found that the R.C. 3127.21(B) factors weighed in favor of continuing jurisdiction in Ohio and that doing so was not so inconvenient that transfer to Texas was warranted.

{¶ 18} Mother now appeals, raising two errors for our review:

> I. The trial court in Williams County lacks subject matter jurisdiction pursuant to statute, and all decisions in this case are void[.]

> II. The trial court erred in overruling the magistrate's determination that Texas was the proper forum to hear the case[.]

## II. Law and Analysis

### A. The trial court has lacked subject-matter jurisdiction over this case from the outset.

{¶ 19} In her first assignment of error, mother argues that the trial court incorrectly determined that Ohio was E.H.'s home state when father filed his complaint, and because of that, erroneously assumed jurisdiction over the case. She contends that the record clearly and convincingly shows that E.H. lived in Texas at the time of filing and that his absence from Ohio was not temporary. She also argues that the trial court incorrectly found that she waived her subject-matter jurisdiction challenge by failing to raise it in 2020 or 2021 and failing to object to or appeal any of the magistrate's and court's earlier decisions, and that she can only challenge the court's jurisdiction through a writ of prohibition.

8.

{¶ 20} Father responds that the evidence in the record shows that the trial court had both home state and substantial connection jurisdiction because E.H. and mother were only temporarily absent from Ohio when he filed his complaint, he and E.H. were residents of and had substantial connections to Ohio, and there was substantial evidence relating to E.H.'s circumstances in Ohio. He also asserts that "the appropriate remedy to challenge jurisdiction was to file objections to the Magistrate's Decision and/or an appeal to the final determination rendered in 2021[,]" and, although mother's actions did not waive the issue of subject-matter jurisdiction, mother "lost her right to a de novo hearing on the jurisdiction issue." As a result, he claims, mother "has no right to now raise jurisdiction" and must challenge the trial court's exercise of subject-matter jurisdiction through a writ of prohibition.

**1. Mother is not precluded from challenging the trial court's subject-matter jurisdiction.**

{¶ 21} As a preliminary matter, we address mother's ability to challenge the court's subject-matter jurisdiction years after the case was filed and the trial court first exercised jurisdiction in 2020. Although the trial court did not outright say in its final decision that mother waived her right to challenge subject-matter jurisdiction or that her challenge was barred by res judicata, it strongly implied that by commenting that it was "odd" that the court had to reexamine two- and three-year-old jurisdiction decisions that mother did not object to, appeal, or try to challenge through a writ of prohibition.

{¶ 22} The UCCJEA—codified in R.C. Chapter 3127—provides the "'exclusive bases for assertion of subject matter jurisdiction to make initial custody

9.

determination[s.]'" *Rosen v. Celebrezze*, 2008-Ohio-853, ¶ 44, quoting *S.B. v. State Dept. of Health & Soc. Servs.*, 61 P.3d 6, 15, fn. 39 (Alaska 2002). "Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any time." *Pratts v. Hurley*, 2004-Ohio-1980, ¶ 11. It is a "'condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any proclamation by that court is void.'" *Id.*, quoting *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 75 (1998); *see also Patton v. Diemer*, 35 Ohio St.3d 68 (1988), paragraph three of the syllabus ("A judgment rendered by a court lacking subject matter jurisdiction is void *ab initio*." (Italics in original.)). A court's lack of "subject matter jurisdiction [can]not be defeated by arguments of res judicata, waiver, or lack of prejudice." *State v. Clay*, 2018-Ohio-985, ¶ 39 (7th Dist.), citing *State v. Wilson*, 73 Ohio St.3d 40, 45, fn. 6 (1995).

{¶ 23} When the lack of subject-matter jurisdiction is "called to the attention of the court *at any time*, the court shall dismiss the action." (Emphasis added.) *LeMarin Condo. Unit Owners Assoc., Inc. v. Bd. of Revision of Ottawa Cty.*, 2008-Ohio-2379, ¶ 8 (6th Dist.), citing *Jones* at 75. For example, in *DeLima v. Tsevi*, 301 Neb. 933 (2018), the Nebraska Supreme Court upheld the district court's decision vacating its prior orders—despite the fact that the parties had been litigating the case in Nebraska, off and on, for nine years—because the district court lacked subject-matter jurisdiction under the UCCJEA.

{¶ 24} Because subject-matter jurisdiction is fundamental to the trial court's power over the parties, none of mother's actions (i.e., initially acquiescing to the court's

10.

jurisdiction and not objecting to or appealing jurisdictional findings or seeking a writ of prohibition) prevent her from attacking the trial court's subject-matter jurisdiction many years after the case was filed. The trial court erred to the extent that it held otherwise.

**2. Texas is the child's home state and has home-state jurisdiction over the parties' custody dispute.**

{¶ 25} Turning to mother's arguments, we find that Texas—not Ohio—was E.H.'s home state on July 28, 2020, the day father filed his custody complaint.

{¶ 26} Although we generally review a trial court's ruling on objections to a magistrate's decision in a custody matter for an abuse of discretion, a trial court's determination of subject-matter jurisdiction is a matter of law that we review de novo. *In re S.C.R.*, 2018-Ohio-4063, ¶ 12 (12th Dist.) When conducting a de novo review, we must independently review the record without deference to the trial court's findings. *Thombre v. Grange Ins. Co.*, 2021-Ohio-3998, ¶ 9 (6th Dist.).

{¶ 27} The jurisdictional issue underlying this case involves the UCCJEA, adopted in R.C. Chapter 3127, which "address[es] interstate recognition and enforcement of child custody orders . . . ." R.C. 3127.01(A). R.C. 3127.15(A) "is the exclusive jurisdictional basis for making a child custody determination by a court of this state." R.C. 3127.15(B). This case turns on whether jurisdiction exists under R.C. 3127.15(A)(1), which provides that Ohio courts have jurisdiction to make an initial determination in a child custody proceeding "only if" the following applies:

> This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from

11.

this state but a parent or person acting as a parent continues to live in this state.

Thus, as applicable here, subject-matter jurisdiction exists only if (1) Ohio is the child's home state on the day the custody action is filed or (2) Ohio was the child's home state within six months before filing and the child is no longer in Ohio, but a parent still lives here. R.C. 3127.15(A)(1).

{¶ 28} As used in the UCCJEA, a child's "home state" is "the state in which a child lived with a parent . . . for at least six consecutive months immediately preceding the commencement of a child custody proceeding . . . ." R.C. 3127.01(B)(7). Any "temporary absence" of the child or parent "is counted as part of the six-month or other period." *Id.*

{¶ 29} The six-month period required by R.C. 3127.01(B)(7) does not have to be the six months immediately before the custody action is filed; instead, the statutory period can be any period of six consecutive months that ends any time within the six months before filing. *In re E.G.*, 2013-Ohio-495, ¶ 14 (8th Dist.), citing *Rosen*, 2008-Ohio-853, at ¶ 41-42 ("Put another way, a child's home state is where the child lived for six consecutive months ending within the six months before the child custody proceeding was commenced."). The home state determination looks only at where the child physically lived, without considering whether a state was the child's legal domicile. *Caruso v. Caruso*, 2013-Ohio-5650, ¶ 15 (11th Dist.) ("[T]he requirement that the child must live in Ohio . . . simply means the child must physically live in Ohio for six

12.

months.").  However, mere "[p]hysical presence of . . . a party or a child is not . . . sufficient to make a child custody determination."  R.C. 3127.15(C).

{¶ 30} The main point of contention in this case is whether E.H. could have been "temporarily absent" from Ohio from mid-November 2019 to May 30, 2020—a period of more than six consecutive months—while E.H. was living with mother in Texas.  The UCCJEA does not define "temporary absence."  As the Eighth District explained in *V.K. v. K.K.*, 2022-Ohio-1661, ¶ 28-31 (8th Dist.), courts around the country have used three different tests to determine whether an absence is temporary:  (1) the duration test, which looks at the length of the absence; (2) the intent test, which examines the parties' intent behind the absence; and (3) the totality of the circumstances test, which looks at all of the circumstances surrounding the absence.  The Eighth District ultimately concluded that "Ohio courts look primarily to the duration of the absence to determine whether it is temporary"—i.e., that Ohio courts primarily rely on the duration test—which "offers a relatively bright-line that is consistent with the UCCJEA's goals of preventing child abduction and forum shopping and strengthening the certainty of home state jurisdiction." *Id.* at ¶ 29, 32, citing *In re B.P.*, 2011-Ohio-2334, ¶ 79-81 (11th Dist.); *Rosen* at ¶ 38; *Stephens v. Fourth Judicial Dist. Court*, 2006 MT 21, ¶ 12; and Charlow, *There's No Place Like Home: Temporary Absences in the UCCJEA Home State*, 28 J.Am.Acad.Matrim.Law 25, 44 (2015); *but see Thomas v. Thomas*, 2017-Ohio-8710, ¶ 41-42 (5th Dist.) (examining the intent behind mother's move to Florida before determining that a 10-month absence was temporary).  The court also noted that an absence is only "temporary" when it is "'for short, limited time periods . . .'" and that

13.

leaving Ohio "'for six months or more . . . does not equate to a short, limited absence[.]'" *Id.* at ¶ 29, quoting *E.G.* at ¶ 22.

{¶ 31} As explained further below, we adopt this interpretation of "temporary absence" because it comports with the purpose of the UCCJEA and the express language of the statute.

{¶ 32} The UCCJEA "'should be construed to promote one of its primary purposes of avoiding the jurisdictional competition and conflict that flows from hearings in competing states when each state substantively reviews subjective factors . . . for purposes of determining initial jurisdiction.'" *Rosen*, 2008-Ohio-853, at ¶ 38, quoting *Stephens* at ¶ 12-13. Accordingly, Ohio courts must resolve statutory conflicts "in a manner consistent with the UCCJEA's intent of strengthening the certainty of home state jurisdiction." *Id.* That is, courts should interpret UCCJEA provisions in ways that "advance[] the primary purpose of the act—to avoid jurisdictional competition—and avoid[] rendering meaningless the provision conferring home-state jurisdiction on the state that was the home state within six months before the commencement of the child-custody proceeding." *Id.* at ¶ 41.

{¶ 33} Under R.C. 3127.01(B)(7), a child's "home state" is "the state in which a child lived with a parent . . . for at least six consecutive months immediately preceding the commencement of a child custody proceeding . . . ." As this court recognized under the UCCJEA's predecessor, the Uniform Child Custody Jurisdiction Act, the "consecutive six-month period [required for home state jurisdiction]" was established by the Ohio legislature "as a definite and certain test which is used to determine the strength

14.

and legitimacy of a particular state's interest in the child." *Wagner v. Wagner*, 1983 WL 13836, *3 (6th Dist. Feb. 11, 1983). The UCCJEA adopted this "definite and certain" six-month time period because "'[m]ost American children are integrated into an American community after living there six months; consequently this period of residence would seem to provide a reasonable criterion for identifying the established home.'" *Id.* at *4, quoting Ratner, *Child Custody in a Federal System*, 62 Mich.L.Rev. 795, 818 (1964).

{¶ 34} This period of "at least six consecutive months" that creates "home state" jurisdiction under R.C. 3127.01(B)(7) expressly includes any "temporary absence[s.]" That is, R.C. 3127.01(B)(7) states that "[a] period of temporary absence . . . is counted *as part* of the six-month or other period." (Emphasis added.) *Id.* This provision necessarily means that only short, limited periods of absence from a state—i.e., ones that are *less than* six months in duration—can be viewed "as part" of the time period of "at least six consecutive months" that triggers home-state jurisdiction.[1] *See In re Marriage of*

---

[1] The dissent disagrees and argues that courts should use "the intent test . . . to determine whether an absence is temporary on a case-by-case basis" without any limit on duration. Dissent at ¶ 70. This approach, however, is contrary to the express language of the statute. As the dissent demonstrates, the intent test has been applied to extend the minimum timeframe for home-state jurisdiction somewhere beyond *seven* months, *eight* months, *ten* months, *eleven* months, and even several *years*—all well-beyond the statutory minimum six-month period. *See* dissent at ¶62. Moreover, this small sampling of cases demonstrates that the intent test leads to inconsistent—and unpredictable— application of the UCCJEA. We reject the intent test because any case-by-case approach that would require courts to "'substantively review[] subjective factors . . . for purposes of determining initial jurisdiction'" is inconsistent "'with the UCCJEA's intent of strengthening the certainty of home state jurisdiction.'" *Rosen* at ¶ 38, quoting *Stephens*, 2006 MT 21, at ¶ 12-13.

15.

*Arulpragasam and Eisele*, 304 Ill.App.3d 139, 148 (1999) ("the 'temporary absence' provision is designed merely to prevent lapses in the six-month period caused by brief interstate visits by the child."). This is the only interpretation that is consistent with Ohio courts' recognition of a "definite and certain" six-month threshold for home-state jurisdiction under the UCCJEA, and comports with the express definition of "home state" under R.C. 3127.01(B)(7).[2]

{¶ 35} Turning to the record in this case, the information that father provided to the trial court at the time of filing his complaint shows that mother and E.H. were not "temporarily absent" from Ohio any time between December 2019 and July 28, 2020. In his parenting affidavit, father averred that E.H. had lived with mother in Ohio from 2015 until December 2019, when he and mother moved to Texas. E.H. lived in Texas with

---

[2] Contrary to the dissent, this interpretation is also compatible with R.C. 3127.22(A), which states that a court "shall decline to exercise its jurisdiction" if the parent seeking to invoke jurisdiction has engaged in "unjustifiable conduct"—i.e., conduct that attempts to create jurisdiction in this state by removing, secreting, retaining, or restraining the child to prevent a child custody proceeding in the child's home state. The dissent is correct that "unjustifiable conduct" focuses on parental intent. But R.C. 3127.22(A) expressly states that a court may consider unjustifiable conduct to "decline to exercise its jurisdiction"—i.e., jurisdiction *that otherwise exists* under Chapter 3127—which necessarily means that unjustifiable conduct is *not* a factor when determining the *existence* of jurisdiction. Moreover, the comments to UCCJEA § 208 (codified in R.C. 3127.22) recognizes that unjustifiable conduct is "less of a concern" now that the UCCJEA creates uniformity for jurisdictional determinations, including the "prioritization of home State . . . ." *See* UCCJEA § 208, comment ("Since there is no longer a multiplicity of jurisdictions which could take cognizance of a child-custody proceeding, there is less of a concern that one parent will take the child to another jurisdiction in an attempt to find a more favorable forum. Most of the jurisdictional problems generated by abducting parents should be solved by the prioritization of home State in Section 201; the exclusive, continuing jurisdiction provisions of Section 202; and the ban on modification in Section 203."). There is no suggestion that "unjustifiable conduct" occurred in this case.

16.

mother until May 30, 2020, when he returned to Ohio to live with father. In other words, father admitted that mother and E.H. were absent from Ohio and living in Texas for exactly *six consecutive months* before E.H. returned to Ohio to live with father. This six-month period in Texas conferred home-state jurisdiction under R.C. 3127.15(A)(1). It is immaterial that father alleged in the complaint that E.H.'s six-month stay in Texas was a "temporary residency" because, as explained, a six-month stay *cannot be* a "temporary residency" under the relevant statutes.

{¶ 36} Moreover, when mother challenged the trial court's subject-matter jurisdiction in 2023, the trial court held a hearing, and the parties submitted evidence that conclusively establishes—with even more certainty—the trial court's lack of subject-matter jurisdiction at the time the complaint was filed. Mother's "Affidavit for UCCJEA Information" from her Texas court case, which she included with the motions to dismiss and transfer that she filed with the trial court, shows that she and E.H. moved to Texas on November 16, 2019, and lived in Texas from then until the "present," which was mid-August 2022. The record also includes student records from E.H.'s primary school showing that mother enrolled E.H. in school in Texas as of November 21, 2019, and that E.H. has attended school in Texas since then.[3] Thus, the record shows that when father

---

[3] The dissent maintains that we should ignore the evidence that mother introduced at the 2023 hearing because it "reflect[s] the time period after father filed his complaint . . . ." Dissent at ¶ 82. At the 2023 hearing, mother proved that E.H. has lived and attended school in Texas from mid-November 2019 through the "present" (i.e., May 2023). This evidence is relevant because it establishes the beginning of E.H.'s stay in Texas—i.e., mid-November 2019—which proves that E.H. lived with his mother for more than six consecutive months before the complaint was filed on July 28, 2020. Although mother

filed his initial complaint on July 28, 2020, E.H. had lived in Texas from November 16 (as stated in mother's affidavit) or November 18, 2019 (as mother testified at the hearing) through May 30, 2020 (when he came to Ohio to live with father for the summer)—a period of more than six consecutive months.

{¶ 37} Thus, Texas has home-state subject-matter jurisdiction over this custody action. When father filed his complaint on July 28, 2020, E.H. had lived in Texas for more than six consecutive months, and that time period ended within the six months before father filed his complaint. R.C. 3127.01(B)(7); *E.G.*, 2013-Ohio-495, at ¶ 14 (8th Dist.), citing *Rosen*, 2008-Ohio-853, at ¶ 41-42. And, because E.H. was in Ohio when father filed, the second option in R.C. 3127.15(A)(1)—which would have required Ohio to be E.H.'s home state within six months before filing (it was not; Texas was), and E.H. to be absent from Ohio (he was not; he was in Ohio)—did not apply. E.H.'s physical presence in Ohio when father filed his complaint is not enough to give an Ohio court jurisdiction under the UCCJEA. R.C. 3127.15(C).

{¶ 38} Finally, given that E.H.'s absence from Ohio lasted more than six months, the "temporary absence" provision of R.C. 3127.01(B)(7) is wholly inapplicable. That

---

*also* offered irrelevant evidence regarding E.H.'s schooling and residency in Texas up to the "present" (i.e., 2023), that does not mean that we should ignore the relevant—and dispositive—evidence she offered regarding start of the "home state" clock in Texas. Indeed, there is no reason why the trial court's hearing on subject-matter jurisdiction should have been limited to a review of the allegations in father's complaint and parenting affidavit, or to physical documents that were in existence on July 28, 2020, as the dissent argues. Mother's affidavit and the school records, although not in existence on July 28, 2020, are relevant and admissible because they establish pre-July 28, 2020 facts demonstrating that Texas is E.H.'s home state.

18.

provision is designed to prevent brief absences—of *less than* six months—from stopping the clock for purposes of calculating the consecutive six-month period required for home-state jurisdiction.

{¶ 39} In sum, the record conclusively establishes that the trial court lacks subject-matter jurisdiction over this case.

### 3. Transcripts are not necessary to resolve the jurisdictional issue.

{¶ 40} The dissent contends that we are unable to disturb the trial court's jurisdiction decision because mother did not file transcripts of the 2020 and 2021 hearings with her appeal, and without them, we cannot tell whether mother's "consent" to jurisdiction was actually a "stipulation to facts" supporting jurisdiction, nor can we tell whether the trial court made a *factual* determination regarding jurisdiction—presumably based upon an absent-from-the-record "stipulation to facts"—rather than simply accepting mother's "consent" to jurisdiction.

{¶ 41} The trial court record, however, does not imply the mother made any factual stipulations relating to jurisdiction at the initial hearings, nor does it reflect any factual determination by the trial court relating to jurisdiction. Rather, the record clearly reflects that mother "consent[ed] to the jurisdiction of . . ." the trial court at the first hearing, and the trial court accepted this "consent" as sufficient to establish jurisdiction.

{¶ 42} It is well established that parties to a case cannot "consent" to giving a court subject-matter jurisdiction that does not exist. *Mullinix v. Mullinix*, 2023-Ohio-1053, ¶ 20 (10th Dist.) ("Parties to an action may not confer jurisdiction on a court by mutual consent."). Although a party *can* stipulate to facts that, if believed, would support

19.

a finding of subject-matter jurisdiction, *Hignight v. Knepp*, 2024-Ohio-1708, ¶ 18 (6th Dist.), again, there is simply nothing in the record of this case to support a finding that mother may have *stipulated to facts* regarding jurisdiction, nor is there anything to support a finding that the trial court made a *factual* determination regarding jurisdiction.

{¶ 43} A court speaks only through its journal entries, and "the entry must reflect the trial court's action in clear and succinct terms." *Infinite Sec. Solutions, LLC v. Karam Props. II, Ltd.*, 2015-Ohio-1101, ¶ 29. "Neither the parties nor a reviewing court should have to review the trial court record to determine the court's intentions." *Id.* Here, the court's entry very clearly states that the court "inquired as to [mother's] . . . *consent to the jurisdiction of the Court*." (Emphasis added.) The court's entry does not contain any factual findings or analysis relating to its jurisdictional determination. At best, a generous reading of the trial court's September 2020 entry shows that mother gave her consent to the court exercising jurisdiction—as opposed to stipulating to facts that would support a finding of subject-matter jurisdiction—which could not create subject-matter jurisdiction that the trial court did not have or bind the trial court as to what the law requires. *State ex rel. Steffen v. Myers*, 2015-Ohio-2005, ¶ 16.

{¶ 44} Moreover, the transcript of the 2023 hearing before the magistrate regarding subject-matter jurisdiction—which we *do* have—makes no reference to any prior evidentiary hearings, factual determinations, or stipulations by the parties regarding facts relating to jurisdiction. Presumably, if the trial court's initial jurisdictional determination was based on factual determinations or stipulations—rather than mere consent, as the September 2020 entry shows—this issue would have come up at the 2023

hearing, especially if there were any previously-established "facts" that somehow contradicted the evidence that was presented to the trial court at that time.

{¶ 45} Further, the facts we need to make our jurisdictional determination are in the record and are undisputed. When he filed his complaint, father himself told the court that E.H. lived in Texas for a period of six consecutive months (from December 2019 to May 2020) that ended within the six months before filing. And the evidence submitted to the trial court in 2023 conclusively shows that E.H. began residing in Texas in mid-November 2019, and returned to Ohio on May 30, 2020. Although father disputed the *intent* behind E.H.'s more-than-six-month stay in Texas, he did not dispute the *accuracy* of the dates that mother provided. Thus, because E.H. resided in Texas with his mom for more than six months before the commencement of this proceeding (and this period ended within six months before the proceeding was commenced), Texas was E.H.'s home state, as defined in R.C. 3127.01(B)(7), at the time father filed the complaint.

{¶ 46} In sum, the trial court lacks subject-matter jurisdiction under the UCCJEA because Texas was E.H.'s home state on the day father filed his complaint. Transcripts of the hearings are unnecessary to the jurisdictional determination in this particular case. Therefore, mother's first assignment of error is well-taken.

### B. Mother's second assignment of error is moot.

{¶ 47} In her second assignment of error, mother argues that the trial court erred by overruling the magistrate's decision that Texas was a more convenient forum for this custody case. Our disposition of mother's first assignment of error has made her second assignment of error moot, and it is therefore not well-taken.

21.

### III. Conclusion

{¶ 48} For the foregoing reasons, the October 10, 2023 judgment of the Williams County Court of Common Pleas, Juvenile Division, is reversed and vacated. The case is remanded to the trial court to vacate as void every order it has issued in this case and dismiss the case. S.P. is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed, vacated, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.          _____
<br>                                                 JUDGE

Charles E. Sulek, P.J.
CONCURS AND WRITES         _____
SEPARATELY.                                     JUDGE

Gene A. Zmuda, J.
DISSENTS AND WRITES
SEPARATELY.

**SULEK, P.J., concurring,**

{¶ 49} I agree that the trial court lacked subject matter jurisdiction over this action at the time father filed his original complaint on July 28, 2020. Therefore, I concur that the proceedings must be vacated and dismissed.

{¶ 50} I write separately to highlight my view that the doctrine of res judicata can be applicable to claims that the trial court lacked subject matter jurisdiction, but in this case, father did not meet his burden of proving that it applied.

22.

{¶ 51} "The doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 2007-Ohio-1102, ¶ 6; *Banks v. Toledo*, 2023-Ohio-1906, ¶ 29 (6th Dist.). "Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action." *Id.* "Where a claim could have been litigated in the previous suit, claim preclusion also bars subsequent actions on that matter." *Id.* "Issue preclusion, on the other hand, serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies." *Id.* at ¶ 7.

{¶ 52} The concept of issue preclusion applies to prior trial court determinations regarding its subject matter jurisdiction such as the one made in this case. *State v. Wogenstahl*, 2024-Ohio-4714, ¶ 25, citing *Travelers Indemn. Co. v. Bailey*, 557 U.S. 137, 153-154 (2009) ("the doctrine of res judicata applies to prior determinations that a court has subject-matter jurisdiction"); s*ee also Jabr v. Ohio Dept. of Job and Family Servs.*, 2020-Ohio-6941, ¶ 11 (10th Dist.), citing *State v. Harding*, 2014-Ohio-1187, ¶ 19-21 (10th Dist.) ("When subject-matter jurisdiction over a claim brought by the same parties or their privies has been actually and directly litigated, the doctrine of issue preclusion (collateral estoppel) prevents the relitigation of that jurisdictional issue in a subsequent action . . ."); *In re A.R., Jr.*, 2017-Ohio-1575, ¶ 10 (10th Dist.) ("Res judicata applies to bar relitigation of the issue of subject-matter jurisdiction. . . . Although it is a correct statement of law that subject-matter jurisdiction may be raised at any time . . . once a

23.

jurisdictional issue has been fully litigated and determined by a court that has authority to pass upon the issue, such determination is res judicata in a collateral action and can only be attacked directly by appeal." (Internal citations omitted for readability.)); *Bakhtiar v. Saghafi*, 2018-Ohio-3796, ¶ 21 (8th Dist.) ("[W]here the question of subject matter jurisdiction has been fully litigated, res judicata applies to the final determination and is not subject to collateral attack."); *King v. King*, 2006-Ohio-183, ¶ 14 (4th Dist.); *Hammon v. Ohio Edison Co.*, 2002-Ohio-2287, ¶ 27 (7th Dist.); *Squires v. Squires*, 12 Ohio App.3d 138, 141 (12th Dist. 1983). "[I]t is established that '[a] party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal.'" *Wogenstahl* at ¶ 25, quoting *State ex rel. Peoples v. Johnson*, 2017-Ohio-9140, ¶ 13.

{¶ 53} Here, mother asserted that the trial court lacked subject matter jurisdiction over the initial complaint. Father responded in his trial brief that when the initial determination of subject matter jurisdiction was made, mother did not file objections to the magistrate's decision or appeal the trial court's final order. Thus, he argued that mother "has lost her right to a de novo hearing on the jurisdiction issue," and she "has no right to now raise jurisdiction" in this matter. In effect, father argued that the issue of subject matter jurisdiction was barred by the doctrine of issue preclusion and mother was collaterally estopped from relitigating it.

24.

{¶ 54} Because the record does not contain the hearing transcripts from 2020, however, a question exists as to whether the issue of subject matter jurisdiction was actually litigated by the parties before the trial court's initial determination, or whether mother simply consented to the trial court having jurisdiction. Notably, issue preclusion only applies where the subject has been fully litigated. *Jabr* at ¶ 10.

{¶ 55} To the extent that the 2020 transcripts were necessary to determine whether the issue of subject matter jurisdiction was barred by issue preclusion, the burden was on father to produce them before the trial court at its May 30, 2023 hearing. Indeed, "[t]he burden of pleading and proving the identity of the issues currently presented and the issues previously decided rests on the party asserting the estoppel." *Am. Fiber Sys., Inc. v. Levin*, 2010-Ohio-1468, ¶ 20, citing *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 198 (1983); *see also Schmitt v. Witten*, 2019-Ohio-1953, ¶ 23 (11th Dist.). In this case, father did not produce the transcripts to prove that the issue was actually litigated. I would hold, therefore, that father did not meet his burden to prove that mother's challenge to subject matter jurisdiction was barred by res judicata.

{¶ 56} Furthermore, because the facts and testimony presented at the May 30, 2023 hearing demonstrate that Texas was E.H.'s "home state" when father filed his initial complaint on July 28, 2020, I concur with the lead opinion that the trial court lacked subject matter jurisdiction over these proceedings and they must be dismissed.

25.

**ZMUDA, J., dissenting,**

{¶ 57} I respectfully disagree with the majority's analysis resolving appellant's first assignment of error. Moreover, my dissent requires consideration of appellant's second assignment of error. I would reverse the trial court's judgment on that alleged error because I believe the trial court abused its discretion in sustaining father's objection to the magistrate's decision transferring jurisdiction to Texas.

{¶ 58} As to appellant's first assignment of error, I disagree with the majority's analysis on three points. First, I believe that the majority, in seeking a bright line test to determine whether a child's absence from a claimed home state was temporary, has employed analysis that does not comport with the intent of the underlying statute. Second, I believe that mother's failure to file a transcript of the trial court's initial hearings on father's complaint precludes this court from reviewing her first assignment of error. Lastly, I believe that the majority improperly considered evidence that did not exist at the time father filed his complaint to find that the trial court did not have subject matter jurisdiction over his claims. For these reasons, I respectfully dissent from the majority's opinion finding appellant's first assignment of error well-taken. I address each of these points in turn.

### A. The parties' intent underlying a child's absence from the claimed home state should be the determining factor in whether that absence is temporary.

{¶ 59} R.C. 3127.01(B)(7) defines a child's "home state" as "the state in which a child lived with a parent . . . for at least six consecutive months immediately preceding the commencement of a child custody proceeding . . . ." R.C. 3127.01(B)(7). Any

26.

"temporary absence" of the child or parent is counted as part of the six-month period. *Id.* Here, it is undisputed that E.H. physically lived in Ohio from 2015 until November, 2019.[4] Then, from November, 2019 to May, 2020, E.H. and mother lived in Texas. Finally, E.H. returned to Ohio in May, 2020 and lived with father from that time until father filed his complaint on July 28, 2020.

{¶ 60} In her motion to vacate, mother argued that the trial court lacked subject matter jurisdiction over the parties' dispute because the time E.H. spent in Texas prior to father's complaint exceeded 6 months. As a result, she continues, Texas became E.H.'s home state and Ohio had no jurisdiction over father's claims. Father, in turn, argues that E.H.'s time in Texas was a temporary absence from Ohio, leaving Ohio as his home state. To determine whether the record supports mother's argument, we must first determine the parameters under which trial courts establish home state jurisdiction.

{¶ 61} The majority notes that courts have used at least three tests to determine whether a child's presence in a different state establishes a new home state or is simply a temporary absence from their actual home state. *V.K. v. K.K.*, 2022-Ohio-1661, ¶ 28-31 (8th Dist.). These include (1) the duration test, (2) the intent test, and (3) the totality of the circumstances test. *Id.* The majority relies on *V.K.* to conclude that the duration test is "clear and widely accepted" in Ohio and applies it to the present case. I disagree with this conclusion.

---

[4] Father's parent proceeding affidavit, filed pursuant to R.C. 3127.23(A), provided a history of E.H.'s residences for the five years prior to initiating this action.

27.

{¶ 62} First, I disagree with the majority's reliance on *V.K.* to find that "Ohio courts primarily rely on the duration test" to preclude any finding that an absence from a home state longer than 6 months is "temporary" as a matter of law. Numerous courts in Ohio, and courts throughout the country, have determined that an absence of more than six months from a claimed home state may be temporary. *See Thomas v. Thomas,* 2017-Ohio-8710, ¶ 38 – 42 (5th Dist.) (affirming the trial court's conclusion that a 10-month absence from Ohio was a temporary absence); *In re. E.G.,* 2013-Ohio-495 (8th Dist.) (holding that a question of fact existed as to whether a child's 7-month absence from Ohio was temporary and remanding to trial court to hold a hearing on that issue); *Richardson v. Richardson,* 255 Ill.App.3d 1099 (3rd Dist.1993) (rejecting a strict six-month limit on "temporary absences" and holding that because the parents always intended for child to return to California after 11-month presence in Illinois that child's absence from California was temporary and Illinois was not child's home state); *Cook v. Arimitsu,* 907 N.W.2d 233 (2018 Minnesota) (affirming trial court's determination that Minnesota was home state despite children's multi-year time living in Japan); *Ogawa v. Ogawa,* 125 Nev. 660 (2009) (affirming that children's 8-month visit to Japan was temporary absence from Nevada for purposes of home state jurisdiction). Additionally, while some courts may have adopted the duration test over the intent test, many courts have reviewed the parties' intent behind the absence from a claimed home state, or ordered the trial court to have a hearing, to determine whether an absence longer than six months was temporary. *See Thomas* at ¶ 41 - 42 (holding that evidence showed mother's intent in taking child to Florida was for move to be temporary and therefore did not divest

Ohio of home state jurisdiction over custody dispute); *Plaza v. Kind,* 2018-Ohio-5215, ¶ 38 (3rd Dist.) (holding that mother's conduct "cast doubt" on whether move to Michigan was intended to be permanent and affirming Ohio trial court's exercise of home statute jurisdiction over child); *In re. Frost,* 289 Ill.App.3d 95, 102 (1st Dist.1997) (holding that parties' intent may be considered in determining whether absence is temporary, in part to avoid absences in which parent represented that child would be returned but extended absence beyond six months); *Love v. Love,* 75 S.W.3d 747, 758 (Miss.Ct.App.2002) (holding that the parties intent in allowing visits between each parent's state but for child to ultimately be returned to Missouri showed that trips to Florida were temporary absences).   Put simply, I disagree with the 8th District Court of Appeals's conclusion in *V.K.,* and the majority's reliance on that conclusion, that the duration test is the preferred method of resolving whether a child's absence from the claimed home state was temporary as described by R.C. 3127.01(B)(7).

{¶ 63} Notwithstanding its reliance on *V.K.*, I believe that the majority's rejection of the intent test is incompatible with R.C. 3127.22(A), which states:

> Except as otherwise provided in section 3127.18 of the Revised Code [permitting court's to exercise temporary emergency jurisdiction] or another law of this state, if a court of this state has jurisdiction under this chapter because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise jurisdiction[.]

29.

"Unjustifiable conduct" is defined as:

> conduct by a parent or that parent's surrogate that attempts to create jurisdiction in this state by removing the child from the child's home state, secreting the child, retaining the child, or restraining or otherwise preventing the child from returning to the child's home state in order to prevent the parent from commencing a child custody proceeding in the child's home state.

{¶ 64} Under these provisions, if a child remains in Ohio for more than six months, establishing Ohio as the child's home state under the majority's duration test, that designation can still be rejected if the child's presence in Ohio was based on a parent's unjustifiable conduct. In other words, the trial court may review a parent's decision to keep a child in Ohio before finding that it has jurisdiction if that parent engaged in unjustifiable conduct. That determination, as with a home state determination, is limited to the trial court's initial exercise of jurisdiction under R.C. 3127.15(A). *Peled v. Peled,* 2023-Ohio-52, ¶ 15. R.C. 3127.22(A) expressly allows trial courts to reject home state jurisdiction in Ohio, which by definition has exceeded six months and would satisfy the majority's duration test, when a parties' conduct was unjustifiable. I see no distinction between a trial court being permitted to review a parties' conduct to determine whether it was unjustifiable in extending a child's absence beyond six months to establish a new home state and a trial court reviewing a parties' intent underlying a child's absence from the claimed home state generally. It is not difficult to imagine an instance where a parent changes their long-held, agreed intent to

30.

return a child to their home state on the threshold of the 6-month duration that would establish a new home state. While this on its own may not be unjustifiable conduct, I find it illogical that the statute would permit the review of a parent's intent only when the other party alleges unjustifiable conduct but not permit the review of a parent's intent underlying the absence to determine whether that absence was temporary. As a result, I believe that the majority's reliance solely on review of the duration of a child's absence from the claimed home state contrasts with at least one other provision of R.C. Chapter 3127 as it relates to determining home state jurisdiction.

{¶ 65} Finally, I believe that the duration test is antithetical to the majority's desire to establish a bright line test for trial courts to determine when a child's absence is temporary pursuant to R.C. 3127.01(B)(7). To determine a child's home state, trial courts must "decide whether the facts presented by the parties fit the definition of 'home state' in R.C. 3127.01(B)(7)." *State ex rel. Hignight v. Knepp,* 2024-Ohio-1708, ¶ 19 (6th Dist.). The majority accepts the definition of "temporary absence" proffered in *V.K.* as only including "short, limited periods[,]" ultimately concluding that if an absence exceeds 6 months it cannot be temporary as a matter of law. *V.K.* at ¶ 29. While this may appear to provide a bright line test, the duration test is more likely to create inconsistent results.

{¶ 66} As a practical matter, if the duration of the child's absence is the only fact used to determine whether it is a temporary absence, then it is likely that each trial court will have a separate definition as to what constitutes "short, limited periods." Perhaps more troubling is the unlikely, but possible scenario in which all courts agree that a

31.

specific length absence cannot be considered temporary. For example, if all trial courts determine that one month cannot be considered a temporary absence, they will establish a defined term of temporary absence where the statute contains no such definition. *Plaza v. Kind,* 2018-Ohio-5215, ¶ 34, fn. 7 (3d Dist.) ("The statute does not define the meaning of "temporary absence."). Notably, the majority's bright line test only provides that bright line when an absence—whether it was intended to be temporary or not—exceeds 6 months. There is no guidance for how a trial court is to determine the nature of an absence less than six months.

{¶ 67} Notwithstanding these general concerns, the majority's duration test will adversely impact cases such as this one where the facts seemingly support a finding that a child's absence was temporary despite lasting longer then six months. For example, in this case, it is undisputed that E.H. lived in Ohio from 2015 until November, 2019. Then, from November, 2019 to May, 2020, E.H. and mother lived in Texas. Finally, E.H. returned to Ohio in May, 2020 and lived with father from that time until father filed his complaint on July 28, 2020. That is, E.H. lived in Ohio for a significant length of time, spent time in Texas, and returned to Ohio. Without more in the record for our review, an issue I address below, these facts seemingly support a finding that the time E.H. spent in Texas was temporary. The majority's duration test would preclude the trial court from reaching that conclusion or even seeking additional briefing on that issue.[5] I find that the

---

[5] The majority recognizes that not all Ohio courts utilize the duration test in its citation to *Thomas,* 2017-Ohio-8710, at ¶ 40-42, where the trial court examined the parties' intent underlying the child's absence from Ohio. The use of the intent test, allowing a trial

32.

majority's "bright-line" duration test is too thin a reed on which to reverse the trial court's initial exercise of subject matter jurisdiction where the only evidence before the court at that time suggests it reached the correct conclusion.

{¶ 68} Despite these concerns, the majority rejects any application of the intent test, concluding that only the duration test promotes the primary purpose of the UCCJEA—"avoiding the jurisdictional competition and conflict that flows from hearings in competing states when each state substantively reviews subjective factors * * * for purposes of determining initial jurisdiction." *Rosen v. Celebrezze,* 2008-Ohio-853, ¶ 38. The majority reasons that the cases in which the intent test have resulted in finding a temporary absence even where the child's absence from the home state exceeded six months has already created inconsistent results. These results are only inconsistent, however, under the majority's duration test. The intent test, while it may require the court to conduct a hearing and resolve factual disputes, provides the exact same definitive result—that one state will exercise jurisdiction in line with the purposes of the statute.

{¶ 69} Further, as described above, the majority's test is only applicable in cases in which the absence from the state in which a party claims home state jurisdiction exceeds six months. The majority does not explain how the nature of an absence that is less than six months is to be determined. That question will certainly require a review of the parties' intent. That is, the trial court will have to review those facts on a case-by-

court to consider the facts underlying a child's absence, as the trial court did in *Thomas,* offers further support for my rejection of the duration test.

33.

case basis in order to determine home state jurisdiction. There is nothing in the statute, even in light of its underlying purpose, that suggests trial courts are only capable of making such a decision when an absence is less than six months, but should be precluded from making that decision when that absence exceeds six months. Nevertheless, the majority adds that language to the statute through its adoption of the duration test for lengthy absences that may, in fact, have been intended to be temporary. The primary purpose of the statue to establish jurisdiction is supported under either test. It is only the duration test that requires adding additional language to the statute.

{¶ 70} In sum, the duration test allows for either inconsistent application of R.C. 3127.01(B)(7)'s "temporary absence" language or the improper addition of a time component to the statute that the General Assembly did not include. I find that these undesirable outcomes can be avoided through the use of the intent test to allow trial courts to determine whether an absence is temporary on a case-by-case basis.[6] For that reason, I dissent from the majority's use of the duration test to resolve appellant's first assignment of error as a matter of law.

**B. Mother's failure to include a transcript of the proceedings in which the trial court determined its jurisdiction precludes this court from reviewing her first assignment of error.**

{¶ 71} In her first assignment of error, mother argues that the trial court lacked subject matter jurisdiction over father's initial complaint because, at the time he filed his

---

[6] In reaching this conclusion, I likewise would reject the totality of the circumstances test described in *V.K.* as I believe the duration of the absence is simply not a factor to be considered when determining whether an absence is temporary.

34.

complaint, E.H.'s home state was Texas. As the majority correctly notes, whether the trial court had subject matter jurisdiction over the parties' interstate custody dispute requires a determination as to whether Texas or Ohio was the E.H.'s home state as defined by R.C. 3127.01(B)(7). Ohio may only exercise subject matter jurisdiction over the initial determination in an interstate child custody dispute under the UCCJEA as described in R.C. 3127.15. *Rosen v. Celebrezze,* 2008-Ohio-853, ¶ 44, citing *Harshberger v. Harshberger,* 724 N.W.2d 148, ¶ 11 (N.D. 2006) ("the UCCJEA establishes the criteria for deciding which state's courts have subject matter jurisdiction to make a child custody decision involving interstate custody disputes.").

{¶ 72} The majority concludes that since E.H. was in Texas for more than six months, that the duration test it adopts shows that his time in Texas was not a temporary absence from Ohio. For that reason, the majority concludes, Texas was E.H.'s home state and that the Williams County Court of Common Pleas lacked subject matter jurisdiction over father's complaint. Since I would reject the duration test in favor of the intent test, I believe that our review of the trial court's home state determination must be based on evidence of the parties' intent at the time this action commenced. *See C.H. v. O'Malley,* 2019-Ohio-4382, ¶ 13 ("If Ohio is the child's home state 'on the date of the commencement of the proceeding * * * then an Ohio court has jurisdiction to make an initial determination in a child-custody proceeding.").

{¶ 73} Father filed his complaint on July 28, 2020. Therein, he alleged that he, mother, and E.H. were all residents of Ohio. Further, he alleged that mother had "only recently established *temporary* residency in the State of Texas[.]" (emphasis added). In

35.

his Parenting Proceeding Affidavit, filed pursuant to R.C. 3127.23(A) and contemporaneous with his complaint, father stated that E.H. lived in Ohio with mother from 2015 until December, 2019. He stated that E.H. then lived in Texas with mother from December, 2019 until May 30, 2020. Consistent with the allegation in his complaint, father stated that this time in Texas did not establish a new residency for E.H. Father then stated that E.H. returned to Ohio on May 30, 2020, and resided with him up to and including the date on which the complaint was filed.

{¶ 74} The trial court, on two separate occasions, expressly found that it had subject matter jurisdiction over father's custody request. First, in its January 22, 2021 order, the trial court found that it had subject matter jurisdiction to order each party to undergo a home inspection prior to awarding custody. On May 26, 2021, the trial court found that it had subject matter jurisdiction to approve the parties' agreed shared parenting plan. Each of these findings were preceded by a hearing, the transcripts of which mother did not provide. As the majority notes, a trial court speaks only through its journal entries, and "the entry must reflect the trial court's action in clear and succinct terms." *Infinite Sec. Solutions, LLC v. Karam Props. II, Ltd.*, 2015-Ohio-1101, ¶ 29. It cannot be disputed that the trial court clearly and succinctly determined that it had subject matter jurisdiction over father's claims in its January 22, 2021 and May 26, 2021 orders. The majority, in citing the trial court's September, 2020 judgment entry in which the trial court states that mother consented to the trial court's jurisdiction, ignores these express conclusions.

36.

{¶ 75} At the time of the hearings at which the trial court found that it had subject matter jurisdiction over father's complaint, the only recorded evidence before the trial court was father's affidavit stating that mother's move to Texas was temporary, suggesting an intent for E.H. to return to Ohio, and that E.H. was in Ohio at the time father filed his complaint. The record reflects that mother never filed a responsive pleading to dispute father's assertion that E.H.'s time in Texas was temporary. It was not until two years later that mother sought to have the trial court's initial custody orders declared void due to the trial court's lack of subject matter jurisdiction over father's claims. The trial court again determined that it had jurisdiction over father's claims. Mother now asks this court to review that determination.

{¶ 76} I fully concur with the majority's conclusion that mother was not precluded from challenging the trial court's subject matter jurisdiction at such a late date as subject matter jurisdiction can be challenged at any time. *Eckart v. Newman*, 2019-Ohio-3211, ¶ 8, fn. 2 (6th Dist.), citing *Infinite Sec. Solutions, LLC v. Karam Properties I, Ltd.*, 2013-Ohio-4415, ¶ 10 (6th Dist.). I also agree with the majority that while a party cannot stipulate or consent to a court's subject matter jurisdiction over the proceedings, they can stipulate to facts that warrant a finding of subject matter jurisdiction. *Hignight v. Knepp*, 2024-Ohio-1708, ¶ 18 (6th Dist.). A party that makes such a stipulation cannot later dispute those facts in an effort to reverse the trial court's exercise of subject matter jurisdiction. *Wiczynski v. Hutton,* 2024-Ohio-2660, ¶ 22 (6th Dist.), citing *Mullinix v. Mullinix,* 2023-Ohio-1053, ¶ 20 (10th Dist.). Because we do not have the transcripts of the trial court's initial hearings, we are unable to review whether mother's conduct

37.

constituted consent to the trial court's jurisdiction or a stipulation to facts that would support the trial court's exercise of subject matter jurisdiction.

{¶ 77} Both times the trial court expressly concluded that it had subject matter jurisdiction over father's claims—that is, that Ohio was E.H.'s home state—were preceded by a hearing. As mother did not provide a transcript of those hearings, we are unable to determine what, if anything, mother asserted in those hearings regarding the nature of E.H.'s absence from Ohio. Mother may have challenged father's factual assertion that E.H.'s residence in Texas was temporary at that first opportunity. If that were true, she would not have waived her later challenge to the trial court's exercise of subject matter jurisdiction. *Eckert* at ¶ 8. However, it is equally possible that mother stipulated that E.H.'s move to Texas was always intended to be temporary but that she later changed her mind. In that instance, mother would have waived her right to later challenge that factual stipulation underlying the trial court's exercise of subject matter jurisdiction. *Wiczynski* at ¶ 22. I note that Mother's 2023 filings do not address whether she had previously opposed father's assertion that E.H.'s time in Texas was temporary at those initial hearings. Her silence in her later filings as to whether she challenged father's assertions at the time the trial court exercised subject matter jurisdiction reinforces our need for the transcripts in order to properly review her arguments now. Without the transcripts, we simply cannot review what occurred at those hearings. When we are not provided with transcripts of the underlying proceedings, we must presume the validity of those proceedings. *Knapp v. Edwards Laboratories,* 61 Ohio St.2d 197, 199 (1980). As a result, we must presume that the trial court's consideration of its own

38.

subject matter jurisdiction at those hearings was valid, warranting the clear and succinct conclusion that it had jurisdiction over father's claims in its January 22, 2021 and May 26, 2021 orders.

{¶ 78} The majority concludes otherwise, finding that because the record does not imply that mother made any factual stipulations regarding the nature of E.H.'s time in Texas that the transcripts are not necessary for our review. The majority further concludes that the trial court only exercised jurisdiction over father's claims because it improperly accepted mother's consent to its jurisdiction. I disagree with the majority's conclusion on each of these points.

{¶ 79} I agree that the record does not imply that mother made any factual stipulations. I find that the record likewise does not imply that she did *not* make such a stipulation. This is precisely why the transcripts are essential to our review. We simply cannot make any conclusion as to how mother responded to father's allegations regarding whether E.H.'s time in Texas was temporary and can only presume that the proceedings were valid.

{¶ 80} Additionally, it is undisputed that the magistrate, in its September 14, 2020 order, found that mother had "consent[ed] to the jurisdiction of the [c]ourt." That order was also preceded by a hearing, of which appellant also failed to provide a transcript for this court's review. The majority correctly notes that a party cannot consent to the subject matter jurisdiction of the trial court. *State ex rel. Steffen v. Myers,* 2015-Ohio-2005, ¶ 16. Although the magistrate's order could be read as mother's consent to the trial court's subject matter jurisdiction, we cannot draw any conclusions as to the nature of

39.

that consent. As with the other hearings, it is equally possible that mother consented to facts that support subject matter jurisdiction as it is that she improperly consented to the trial court's exercise of subject matter jurisdiction. Again, we must presume the validity of those proceedings and can only presume that the trial court made a proper inquiry as to its own jurisdiction. *Knapp,* 61 Ohio St.2d at 199. The majority, by finding that the trial court only exercised jurisdiction over this matter through mother's "consent," ignores this requirement as well as the trial court's January 22, 2021, and May 26, 2021, orders in which it found that it had subject matter jurisdiction without reference to mother's "consent." It is possible that mother challenged the trial court's jurisdiction, or stipulated to facts that would establish jurisdiction, at either of the hearings preceding these orders. Without the transcripts, we cannot review whether either event occurred. The majority's limitation of its analysis to mother's "consent" to jurisdiction does not address the impact of the absence of this portion of the record on our analysis despite correctly recognizing that mother could have challenged jurisdiction at either time. The parties' silence as to this issue at the 2023 hearing further reinforces our need for these transcripts in order to review appellant's jurisdictional claim.

{¶ 81} For these reasons, I dissent from the majority's conclusion that we can substantively review the trial court's determination that it had subject matter jurisdiction over father's claims without transcripts of the trial court's initial hearings. I emphasize that I make no finding as to whether mother consented to facts supporting the trial court's exercise of jurisdiction. I merely conclude that mother's failure to include the necessary

40.

transcripts prevents us from determining whether or not she did make such a stipulation, requiring this court to affirm the trial court's findings.

### C. The evidence on which a trial court determines a child's home state cannot be based on evidence that relates to the time period after commencement of the custody action.

{¶ 82} In addition to my dissent from the majority as to the test applicable to home state determinations and the necessity of hearing transcripts, I believe that the majority improperly relies on evidence introduced in 2023 to determine E.H.'s home state at the time father filed his complaint in 2020. Specifically, the majority considered mother's affidavit filed in the Texas action that she initiated in 2023, that stated she had lived in Texas from November 2019 to the "present" (2023), and the attached records showing that E.H. had been enrolled in school in Texas for that same time period. I believe that any evidence reflecting the time period after father filed his complaint is irrelevant to our analysis.

{¶ 83} As both I and the majority note, home state jurisdiction is established based on where the child lived prior to the commencement of the child custody proceeding. R.C. 3127.01(B)(7); *C.H. v. O'Malley,* 2019-Ohio-4382, ¶ 13. Even assuming mother had challenged father's assertion that E.H. was only temporarily absent from Ohio during the relevant time period, any records or testimony related to E.H.'s time in Texas or his enrollment in school *after* father commenced this action is irrelevant to determining E.H.'s home state. By considering E.H.'s school records and mother's testimony regarding the two years after father commenced this action, the majority exceeds the scope of the issue before the trial court that we are now asked to review. Certainly,

41.

E.H.'s enrollment in a Texas school and mother's testimony would be relevant under the intent test that I would find applicable. However, that evidence and testimony would have been limited to what was available on July 28, 2020. I dissent from any indication by the majority that these records and testimony subsequent to father's complaint would be relevant to the trial court's home state jurisdiction under any applicable test.

### D. The trial court abused its discretion in sustaining father's objection to the magistrate's decision transferring jurisdiction to Texas

{¶ 84} Because I disagree with the majority's resolution of appellant's first assignment of error and its conclusion that the second assignment of error was moot, I would have proceeded to review appellant's second assignment of error. For the following reasons, I would find that the trial court abused its discretion in overruling the magistrate's order to transfer jurisdiction to Texas.

{¶ 85} In her second assignment of error, mother argues that that trial court erred in denying her May 4, 2023 "motion to decline jurisdiction in favor of transfer jurisdiction to the 128th Judicial District of Orange County, Texas." She argues that because E.H. had resided with her in Texas for three years, had been enrolled in school during that time, and because she had filed actions related to her custody of E.H. in Texas, that Texas is the appropriate jurisdiction for any further custody disputes. She also argued that Ohio is no longer an appropriate jurisdiction due to E.H.'s lack of contact with the state. As a result, she argues that the trial court abused its discretion when it sustained father's objection to the magistrate's decision to decline continued jurisdiction over the dispute.

42.

**{¶ 86}** Once a court exercises jurisdiction under the UCCJEA, that court retains continuing and exclusive jurisdiction over that action pursuant to R.C. 3127.16. R.C. 3127.21(A) allows a court that has previously exercised subject matter jurisdiction to "decline jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more convenient forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or the request of another court." The trial court's decision to continue or decline jurisdiction as an inconvenient forum must be based on the factors described in R.C. 3127.21(B). *In re. A.O.,* 2021-Ohio-880, ¶ 12 (6th Dist.).

**{¶ 87}** Here, the magistrate declined to exercise continued jurisdiction over the dispute in favor of Texas. Upon father's filing of his objection to that decision, the trial court was obligated to complete an independent, de novo review of the magistrate's decision and enter its own judgment. *M.M. v. R.M.,* 2019-Ohio-4507, ¶ 8 (6th Dist.). We review a trial court's ruling on objections to a magistrate's decision for an abuse of discretion. *B.M. v. H.L.,* 2015-Ohio-2444, ¶ 7 (6th Dist.). An abuse of discretion occurs when "the trial court's attitude is arbitrary, unreasonable, or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). I would find that the trial court's decision was arbitrary and unreasonable in light of the evidence before it.

**{¶ 88}** In its judgment entry, the trial court addressed each of the inconvenient forum factors separately. The court found that under the first factor under R.C. 3127.21(B)(1)—whether domestic violence has occurred and is likely to continue—did not weigh in favor of the transfer because it found there was no credible threat that

43.

domestic violence had occurred. As to the length of time E.H. resided outside of Ohio, the factor described in R.C. 3127.21(B)(2), the trial court found that although E.H. had been out of the state for three years, this was a small portion of his 12 years of age and weighed against finding Ohio was an inconvenient forum. R.C. 3127.21(B)(3) and (B)(4) require the court to consider the distance between the courts and the financial circumstances of each party, respectively. The trial court found these factors were neutral as the convenience of Ohio or Texas exercising jurisdiction over the dispute would require extensive travel for one party or the other, while the parties' agreement required them to share any expenses for E.H.'s travel. The trial court found that the nature and location of the evidence, a factor to be considered under R.C. 3127.21(B)(6), weighed in favor of continued jurisdiction in Ohio as mother alleged that father had abused E.H. while he was in Ohio, and that any difficulty of mother presenting evidence here is negated by technology that would allow her to appear remotely. Under R.C. 3127.21(B)(7) and (B)(8), the trial court found that it could decide the matter expeditiously because its familiarity with the case was superior to any Texas court as it had been involved with the dispute since 2020, ordered the home study, and had already conducted "numerous hearings" with the parties. For these reasons, the trial court held that Ohio remained a proper forum for the underlying action and denied mother's motion to transfer jurisdiction to Texas. Mother argues that the trial court abused its discretion when it weighed these factors in favor of continued jurisdiction in Ohio. I agree.

{¶ 89} R.C. 3127.21(B)(1) required the trial court to determine whether domestic violence has occurred and is likely to continue "and which state could best protect the

44.

parties and the child." When considering whether domestic violence had occurred, the trial court found no credible evidence that either parent had abused E.H. However, the trial court then held that pursuant to the factor described in R.C. 3127.21(B)(6)—"the nature and location of the evidence required to resolve the pending litigation"—it would be more convenient for this matter to remain in Ohio because all of the evidence of the abuse mother alleged was located in Ohio. The court further held that this would not inconvenience mother for court appearances as she could appear remotely to hearings in Ohio, a factor to be considered under R.C. 3127.21(B)(3). The trial court's weighing of these factors in favor of jurisdiction in Ohio is inconsistent. If there is no credible evidence of abuse, then the location of evidence should not have weighed in favor of jurisdiction in either state. Additionally, it is equally feasible that father could appear at proceedings in Texas remotely just as the trial court found mother could have appeared in Ohio. The impracticalities of appearing in Ohio or Texas for either parent could have been solved by remote appearances. The trial court's conclusion that these factors weighed in favor of continuing jurisdiction in Ohio was arbitrary.

{¶ 90} Additionally, the trial court held that because it had overseen numerous hearings and ordered the initial home study that it was more familiar with the facts of this case than the appropriate court that could exercise jurisdiction in Texas. It cannot be disputed that since this action had been pending since 2020 that the trial court would be more familiar with the facts. However, at the time the trial court exercised continuing jurisdiction over this matter, the only issue before the court was whether it should exercise continuing jurisdiction. There is no indication in the record that any issues were

45.

pending that required expedited resolution or the trial court's familiarity with the case for such a resolution. Since there were no matters pending that required the trial court's knowledge of the case history for an expedited review, the trial court's reliance on these factors to exercise continuing jurisdiction was arbitrary.

{¶ 91} Lastly, the trial court's consideration of the three years E.H. had spent in Texas as being only a small portion of his 12 years of age is not guided by the statutory factor expressed in R.C. 3127.21(B)(2). The statute requires only the consideration of the time spent outside the state, not how much of their life has been spent outside the state. The evidence here clearly shows that E.H. has spent three years in Texas since the trial court initially determined it had jurisdiction over this matter. In fact, E.H. appears to have spent no significant length of time in Ohio since the trial court made its initial orders in this case. E.H.'s time in Texas has been clearly established by the evidence Mother provided at the 2023 hearing—coincidentally, the same evidence I believe the majority should not have considered when reviewing the validity of the trial court's initial exercise of jurisdiction over this matter. E.H.'s time in Texas plainly establishes—under either the majority's duration test or my preferred intent test—that had this matter been filed in 2023, that Texas would have jurisdiction over this matter pursuant to R.C. 3127.15. Put simply, there is no factor in R.C. 3127.21 that warrants the trial court's conclusion regarding the relation of the time spent in Texas to the total span of E.H.'s life to determine whether it should continue exercising jurisdiction. I would find that it was unreasonable for the trial court to weigh this factor in favor of exercising continuing

46.

jurisdiction by ignoring the undisputed evidence that E.H. has continuously resided in Texas for the duration of this matter.

{¶ 92} For these reasons, I would find that the trial court erred in sustaining father's objections to the magistrate's order transferring jurisdiction to Texas as it was arbitrary and unreasonable. Therefore, the trial court abused its discretion in exercising continuing jurisdiction pursuant to R.C. 3127.21. As a result, I would find appellant's second assignment of error well-taken and would reverse the trial court's decision.

## Conclusion

{¶ 93} For the foregoing reasons, I would find that because mother failed to include the transcripts of the trial court's hearing, that we must presume the validity of the trial court's initial finding of subject matter jurisdiction over father's claim. I would find appellant's first assignment of error not well-taken and would address her second assignment of error. In doing so, I would find that the trial court abused its discretion in sustaining father's objections to the magistrate's decision, would order the trial court to adopt the magistrate's decision, and stay these proceedings pending determination that a child custody proceeding has been commenced in Texas pursuant to R.C. 3127.21(C). Because the majority concludes that the trial court lacked subject matter jurisdiction over father's claims, rendering mother's second assignment of error moot, I respectfully dissent from the majority's opinion.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

47.